DIANA SUTTLE, a Minor, By and Through the Central Trust Bank, Duly Appointed Conservator of the Minor's Estate, Plaintiff-Appellant and Cross-Appellee, v. LAKE FOREST HOSPITAL, Defendant-Appellee and Cross-Appellant.

First District (2nd Division)   No. 1—97—3567

Opinion filed June 30, 2000.

Hegarty & Heath (Terrence K. Hegarty and Timothy W. Heath, of counsel), and William J. Harte, Ltd. (William J. Harte and Joan M. Mannix, of counsel), both of Chicago, for appellant.

Ruth E. VanDemark and Ralph N. Glader, both of Law Offices of Ruth E. VanDemark, of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

This appeal concerns a medical malpractice action brought on behalf of plaintiff, Diana Suttle, a minor, by and through the Central Trust Bank. Therein, plaintiff sought recovery from defendant, Lake Forest Hospital, for severe and permanent damages allegedly sustained at or around the time of her birth due to the negligence of hospital personnel. Following trial, a jury returned a general verdict in plaintiff's favor and awarded damages in the amount of $10,944,000. The award was subsequently reduced *nunc pro tunc* to $9,644,000 as a result of a settlement agreement entered into between plaintiff and prior defendants. Thereafter, the trial court entered judgment *non obstante veredicto* (*n.o.v.*) upon defendant's posttrial motion, finding that plaintiff failed to prove the existence of proximate cause as to any of her counts alleging negligence. The trial court further granted defendant's alternate motion for a new trial, finding that unfair prejudice would justify a new trial in the event this court reversed, set aside or vacated the aforementioned ruling. Plaintiff appeals, contending that the trial court erred: (1) in entering judgment *n.o.v.* in favor of the defendant hospital; and (2) in finding reversible prejudicial error that would, in the alternative, compel a new trial on liability and damages. Defendant, in its "conditional" cross-appeal, contends that if the trial court had not properly entered judgment *n.o.v.* or, in the alternative, ordered a new trial, a remittitur of the judgment would be compelled.

For the reasons that follow, we reverse the trial court and reinstate the judgment for plaintiff.

## BACKGROUND

Cynthia Suttle was admitted as a patient to Lake Forest Hospital

for the birth of her first baby on August 28, 1986. Ms. Suttle's obstetrician, Dr. Anthony Greis, examined Ms. Suttle at or around 9:17 a.m., observing bright red vaginal bleeding. He immediately ordered a cesarean section, as he knew that there was fetal distress and he suspected that Ms. Suttle was bleeding as a result of a placental abruption, which is the premature detachment of a normally situated placenta. At or around 9:35 a.m., Diana Suttle was born. After delivery, Dr. Greis removed the placenta and looked at it for an inherent blood clot and evidence of abruption. Finding neither, he sent the placenta to the hospital's pathology laboratory for analysis without giving a description of the placenta to any hospital personnel.

The pathology report, which was reduced to typewritten form and placed in Diana's medical record two days after her birth, showed that there was a velamentous insertion of the umbilical cord into the placenta; meaning, the umbilical cord had inserted itself into the membranes of the placenta rather than directly into the placenta itself. The report further indicated that there had been a fetal bleed, or rupture, of one of the blood vessels involved in the velamentously inserted umbilical cord. There was no indication of an abruption or any other abnormalities of the placenta; therefore, the pathologist indicated it was reasonable to conclude that the vaginal bleeding observed by Dr. Greis prior to Diana's birth was Diana's blood, as opposed to Ms. Suttle's.

Pediatrician Dr. Edwin Salter and nurse Kimberly Mills provided the initial treatment to Diana in the operating room after her birth. Neither was aware of the abnormality of the placenta. Diana's Apgar scores were normal, but since she was having continued difficulty breathing, at or around 9:45 a.m. nurse Mills took Diana to the hospital's intermediate, or level 2, perinatal care nursery for diagnosis and continued treatment. Dr. Salter consulted with transport team personnel at Evanston Hospital's intensive, or level 3, perinatal care nursery and gave the transport team all of the information he had available to him concerning Diana, who was diagnosed as suffering from respiratory distress syndrome.

Dr. Salter called Evanston Hospital to request a transfer for Diana sometime between 10:40 a.m. and 11 a.m. Evanston Hospital's transport team arrived between 1:30 p.m. and 1:45 p.m. At no time prior to the transport team's arrival was a blood pressure for Diana ordered or taken. Rather, the transport team first took Diana's blood pressure after arriving at Lake Forest Hospital, finding it to be below normal. As a result of Diana's blood pressure readings, the transport team immediately started a blood transfusion.

Diana was transported to Evanston Hospital's level 3 nursery,

where she remained until September 16, 1986. While at Evanston Hospital, Diana was treated for circulatory, liver and kidney problems resulting from the substantial blood loss that occurred before her delivery and until the first blood transfusion. The nursery personnel at Evanston Hospital further noted that Diana exhibited problems with her tone, sucking reflex and lack of head circumference growth.

Plaintiff filed her original medical malpractice action on January 3, 1989. The initial complaint was voluntarily dismissed by plaintiff after the circuit court of Cook County transferred the action to Lake County. Plaintiff then refiled her action in Cook County on July 6, 1990. The circuit court of Cook County granted motions for summary judgment as to the refiled action on February 24, 1997, as a settlement agreement had been entered into between plaintiff and the named defendants, except Lake Forest Hospital. Plaintiff filed her second amended complaint on October 29, 1996, against the hospital only. The allegations of that complaint were repeated in a reordered third amended complaint filed on March 25, 1997. It is this third amended complaint from which the present action arises.

The two-count third amended complaint alleged that, at the time of her birth, Diana was suffering from hypovolemic shock caused by a reduction in volume of blood that was neither diagnosed nor treated by Diana's treating physician or the nurses at Lake Forest Hospital. More specifically, count I alleged that, because the hospital failed to record a description of Diana's placenta in her medical chart in violation of section 250.1830(h)(2)(B) of the Illinois Administrative Code (77 Ill. Adm. Code § 250.1830(h)(2)(B) (1996))[1], the hospital was negligent. Count II asserted that the hospital was negligent in that it failed "to provide any suitable inserviced infant blood pressure equipment" and that it failed "to monitor [Diana's] blood pressure while she was a Level 2 nursery patient." Both counts further alleged that these negligent acts "contributed to the delay in the diagnosis of [Diana's] acute anemia and as a proximate result, [Diana] has suffered extreme and permanent neurologic and other damage which has resulted in great and permanent disability."

A jury trial was commenced on April 30, 1997. Following a two-week trial, wherein the testimony of 27 witnesses was presented, instructions with separate and independent elements of negligence and proximate cause were submitted for the jury's consideration, to

---

[1]The Illinois Administrative Code provides that "[f]or each infant there shall be accurate and complete medical records. The medical records shall include: *** description of placenta and amniotic fluid." 77 Ill. Adm. Code § 250.1830(h)(2)(B) (1996).

wit: (1) defendant's failure to provide an adequate mechanism by which a description of the placenta would appear in Diana Suttle's hospital chart; (2) its failure to issue policies and procedures for the monitoring of blood pressure of stressed newborns in its nursery; and (3) its failure to provide any suitable in-serviced newborn blood pressure equipment. The jury returned a general verdict of $10,944,000 in favor of plaintiff and against defendant. The trial court entered judgment thereon on May 14, 1997. By an order dated May 19, 1997, *nunc pro tunc* May 16, 1997, the trial court reduced the verdict and judgment entered against Lake Forest Hospital to $9,644,000 based upon a settlement agreement in the amount of $1,300,000 that had been entered into between plaintiff and prior defendants on February 24, 1997. Thereafter, on June 27, 1997, Lake Forest Hospital moved the trial court to set aside the verdict and (1) enter judgment *n.o.v.* in favor of defendant and against plaintiff; or (2) in the alternative, to grant defendant a new trial on all issues; or (3) in the further alternative, to enter an order of remittitur against the plaintiff in the amount of $6 million.

The trial court granted Lake Forest Hospital's posttrial motion for judgment *n.o.v.* on August 26, 1997. In its order, the court stated that it found persuasive defendant's argument that the plaintiff had failed to prove that any negligence of the defendant proximately caused Diana's injuries, explaining that "[e]ven if the evidence here, when viewed under the Pedrick standard, could arguably establish the negligence of the defendant hospital personnel, it does not establish the necessary link between that negligence and minor plaintiff's injuries." See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). Moreover, although the lower court denied defendant's request for a remittitur of the damages award, the court alternatively granted Lake Forest Hospital's posttrial motion for a new trial, finding:

> "Of all the unfairness described, one issue justifies, in the court's mind's eye, a new trial, in the event a higher court differs with the court's ruling above [granting judgment *n.o.v.* in defendant's favor]. That is the unfair prejudice caused by the plaintiff's suggesting to the jury, without any evidence to support the inference, a possible cover-up by the hospital in its placing the word 'placenta' upon the plaintiff's medical chart at some unknown time after her birth. Once that seed was planted, in the course of the trial as this court witnessed it, the damage could not be undone."

Judgment was entered on the order on September 12, 1997. Plaintiff and defendant timely filed their notices of appeal on September 19, 1997, and September 29, 1997, respectively.

OPINION

I

Plaintiff first contends that the trial court erred in entering judgment *n.o.v.* in favor of Lake Forest Hospital. Specifically, plaintiff avers that the evidence relating to defendant's breaches of the standard of care and proximate cause overwhelmingly supported the jury's verdict in plaintiff's favor. The hospital, however, counters that the lower court correctly ruled in its favor since plaintiff failed to establish that Lake Forest Hospital deviated from the standard of care in its treatment of plaintiff and that such a deviation proximately caused plaintiff's injuries.

■ According to *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967), judgments *n.o.v.* should be entered only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14; see also *Maple v. Gustafson*, 151 Ill. 2d 445, 603 N.E.2d 508 (1992). "In ruling on a motion for a judgment *n.o.v.*, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion." *Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512. A motion for judgment *n.o.v.* presents a question of law and will be granted only if there is a total failure of lack of evidence to prove an essential element of the plaintiff's case. *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967, 972, 691 N.E.2d 1, 4 (1997); see also *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665 (1942). As such, the court has no right to enter a judgment *n.o.v.* if there is any evidence demonstrating a substantial factual dispute, or where the assessment of credibility of witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Lee v. Grand Trunk Western R.R. Co.*, 143 Ill. App. 3d 500, 509, 492 N.E.2d 1364, 1372 (1986); *Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512.

■ In a medical malpractice action, as alleged by plaintiff in the present dispute, Illinois law mandates that plaintiff prove: (1) the proper standard of care by which to measure the defendant's conduct, (2) a negligent breach of the standard of care, and (3) resulting injury proximately caused by the defendant's lack of skill or care. *Higgens v. House*, 288 Ill. App. 3d 543, 546, 680 N.E.2d 1089, 1092 (1997). Normally, laypersons are not qualified to evaluate professional medical conduct (*Addison v. Whittenberg*, 124 Ill. 2d 287, 297, 529 N.E.2d 552, 556 (1988)); therefore, it is the plaintiff's duty to present expert

testimony that will establish the applicable standard of care, a deviation from the standard, and the resulting injury to the plaintiff in order to establish a *prima facie* case of medical negligence. *Wodziak v. Kash*, 278 Ill. App. 3d 901, 911, 663 N.E.2d 138, 145 (1996); *Higgens*, 288 Ill. App. 3d at 546, 680 N.E.2d at 1092.

■ In the case *sub judice*, plaintiff presented evidence establishing that the standard of care required Lake Forest Hospital to have in place policies and procedures for monitoring the blood pressure of distressed newborns in its level 2 nursery. Not only was it undisputed that Lake Forest Hospital had no policies or procedures in place requiring the monitoring of the blood pressure of newborns, there was expert testimony that Lake Forest Hospital violated the standard of care for level 2 hospitals in the northeast region of Illinois by not recognizing that Diana was hypotensive (meaning, "characterized by low blood pressure or causing reduction in blood pressure") because her blood pressure was not monitored. Although the hospital countered this testimony with evidence of its own that it fully complied with the Illinois Administrative Code (Code) (77 Ill. Adm. Code § 250.1830-(h)(2)(B) (1996)) and the accepted standard of care within the medical community (see *Johnson v. St. Bernard Hospital*, 79 Ill. App. 3d 709, 718, 399 N.E.2d 198, 205 (1979)), the weight to be given to medical expert testimony is for the trier of fact to determine. *Topp v. Logan*, 197 Ill. App. 3d 285, 298, 554 N.E.2d 454, 463 (1990). Where the evidence is conflicting, as it is in the instant case, it is within the jury's province to resolve the conflict. *Topp*, 197 Ill. App. 3d at 298, 554 N.E.2d at 463.

■ In our view, defendant's contentions to the trial court and on review regarding evidence of a standard of care violation concern contested factual issues that the jury ultimately resolved by finding in plaintiff's favor. Regardless of the jury's determination, the lower court held that it found persuasive defendant's argument that the plaintiff had failed to prove that any negligence of the defendant proximately caused Diana's injuries, explaining that "[e]ven if the evidence here, when viewed under the Pedrick standard, could arguably establish the negligence of the defendant hospital personnel, it does not establish the necessary link between that negligence and minor plaintiff's injuries." Unquestionably, however, issues involving proximate cause are fact specific and therefore uniquely for the jury's determination. *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 107, 679 N.E.2d 1202, 1207 (1997).

> "When a plaintiff comes to a hospital already injured, *** or has an existing undiagnosed medical condition, *** and while in the care of the hospital is negligently treated, the question of whether the

defendant's negligent treatment is a proximate cause of plaintiff's ultimate injury is ordinarily one of fact for the jury." *Holton*, 176 Ill. 2d at 107, 679 N.E.2d at 1207.

See also *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 328 N.E.2d 301 (1975).

Here, there was explicit expert testimony, to a reasonable degree of medical certainty, that the lack of an assessment of Diana's blood pressure led to delayed diagnosis that was one of the proximate causes of her current problems, including her neurological injuries. Defendant, however, contends that, because Dr. Salter testified that his treatment of Ms. Suttle would have been the same regardless of whether he was aware of the velamentous insertion, plaintiff failed to prove the existence of proximate cause. In support, defendant cites *Gill v. Foster*, 157 Ill. 2d 304, 626 N.E.2d 190 (1993), where summary judgment was entered in favor of the defendant hospital despite the failure of a nurse to notify a physician that a patient being discharged from the hospital complained of chest pains. *Gill* held that summary judgment was proper because there was evidence that the physician was already aware of the patient's complaints, but instead decided that such complaints were insignificant; therefore, the nurse's breach in failing to inform the physician of the patient's complaints did not proximately cause the delay in the correct diagnosis of plaintiff's condition. *Gill*, 157 Ill. 2d at 311, 626 N.E.2d at 193.

*Gill* is inapposite to the case at bar. In this case there was a factual issue as to what Dr. Salter would have done had he known of the condition of the placenta. In *Gill*, there was no factual dispute concerning what the doctor would have done had he known of the plaintiff's chest pains, because in fact he did know. In the instant case, there is testimony that Dr. Salter diagnosed Diana as suffering from respiratory distress syndrome, rather than hypovolemic shock, because he was *unaware* of Ms. Suttle's velamentous insertion. It is undisputed that evidence which shows to a reasonable degree of certainty that negligent delay in diagnosis or treatment lessened the effectiveness of treatment is sufficient to establish proximate cause. *Holton*, 176 Ill. 2d at 114-15, 679 N.E.2d at 1211.

> "To the extent a plaintiff's chance of recovery or survival is lessened by the malpractice, he or she should be able to present evidence to a jury that the defendant's malpractice, to a reasonable degree of medical certainty, proximately caused the increased risk of harm or lost chance of recovery." *Holton*, 176 Ill. 2d at 119, 679 N.E.2d at 1213.

Unlike the situation in *Gill*, whether Dr. Salter's treatment of Diana would have remained the same had any of the hospital personnel informed him of the condition of the placenta was a question of fact

for the jury to determine. *Holton*, 176 Ill. 2d at 107, 679 N.E.2d at 1207.

Furthermore, the hospital's argument does not address its failure to have equipment on hand for measuring the blood pressure of newborns. Dr. Salter did testify that if he had known of the plaintiff's abnormally low blood pressure at 10 a.m., he would have called the Evanston Hospital transport team at that time.

After considering the evidence in the light most favorable to the plaintiff, we do not believe that the evidence so overwhelmingly favors defendant that no contrary verdict to defendant could ever stand. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14. Thus, it is our view that the trial court erred in entering judgment *n.o.v.* in favor of Lake Forest Hospital (*Holton*, 176 Ill. 2d at 109, 679 N.E.2d at 1208), particularly where issues regarding standard of care and proximate cause are questions of fact properly to be decided by the jury (see *Aguilera*, 293 Ill. App. 3d at 971, 691 N.E.2d at 4).

II

Plaintiff next contends that the trial court erred in finding reversible prejudicial error that would, in the alternative, compel a new trial on liability and damages. Specifically, plaintiff argues that any conclusion the jury may have reached regarding a possible cover-up by the hospital in placing the word "placenta" upon Diana's medical record at some unknown time after her birth was based on undisputed evidence. Defendant, however, contends that the undisclosed testimony of Kim Mills, as well as the plaintiff's attorney's impermissible use of that testimony, irreparably harmed Lake Forest Hospital thereby depriving it of a fair trial and affecting the jury's verdict.

■ A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion. *Heeg v. Jewel Cos.*, 232 Ill. App. 3d 75, 81, 596 N.E.2d 765, 770 (1992); *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513. In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513. A reviewing court will not reverse a trial court's grant of a new trial merely because it would have come to a different conclusion on the same facts. *Lagoni v. Holiday Inn Midway*, 262 Ill. App. 3d 1020, 1028, 635 N.E.2d 622, 628 (1994).

■ In the instant case, Kim Mills' evidence deposition was taken in Kentucky on November 7, 1996. There, she testified that one of her responsibilities as a delivery nurse was to provide a description of the

placenta either in a baby's chart or directly to a nursery nurse. When asked whether she had filled in a description on Diana's medical chart on August 28, 1996, nurse Mills responded, "I don't recall." In response to a question regarding what nurse Mills' testimony would be at trial, plaintiff, in her answer to defendant's Rule 213 (166 Ill. 2d R. 213) interrogatories, stated:

> "She is expected to testify that she was the labor and delivery nurse involved in the care of Cynthia Suttle. She was the one who discovered the vaginal bleeding. She is the one who helped Dr. Salter in the care and treatment of Diana Suttle after Diana's delivery until Diana reached the Level 2 nursery. Ms. Mills did not see the placenta on August 28, 1986. She did not receive a description of the placenta anytime prior to the deliver of Diana Suttle or anytime before she helped take Diana to the nursery. She completed the summary of labor form. She wrote in the circle near the location of the word 'insertion.' That means that the placenta was intact. She did not know what a velamentous insertion was on August 28, 1986. She could have been trained to recognize the difference between a normal placenta and a velamentous insertion, but she was not. She was not aware until after August 28, 1986, about the hospital licensing act regulation which requires a description of the placenta be placed in the newborn chart. She is one of the people who fills out the newborn record. She did not describe the placenta in the newborn record because she did not have such a description. There is no description of the placenta anywhere in Diana's chart. The hospital-wide policy for the monitoring of vital signs applied throughout the hospital. It is a standard policy for the hospitals that she has worked at. She has seen blood pressures of newborns being taken at other hospitals that she has worked at."

Even though plaintiff's answer to defendant's Rule 213 interrogatories does not state that Kim Mills wrote the word "placenta" on the chart, in his opening, Lake Forest's attorney explained that Kim Mills, the labor and delivery nurse, knew there had to be a description of the placenta on the newborn chart. Additionally, the attorney stated that Kim Mills "wrote the word 'placenta' on the chart, leaving a blank after it because the doctor didn't know the description and had sent it to the laboratory."

During trial, Kim Mills testified that she had never been instructed to obtain a description of the placenta and record it in the newborn chart. In addition, she indicated that the word "placenta" was not on the chart when she filed the newborn record and left the level 2 nursery on August 28, 1986. And, she denied that the word written on the chart was in her handwriting. Defendant immediately objected and a

sidebar was held wherein defendant moved for a mistrial, arguing that plaintiff did not supplement her answer to defendant's Rule 213 interrogatories describing Kim Mills' testimony with the new information that she did not write the word "placenta" on Diana's medical chart, in violation of Supreme Court Rule 213(i) (166 Ill. 2d R. 213(i)).[2] The trial court denied defendant's motion; however, it admonished plaintiff not to allow an inference to surface that Diana's medical record had been altered by Lake Forest Hospital.

Additionally, regarding the placenta, Dr. Paxton under cross-examination, testified as follows, over defendant's objection:

"Q. Well, let's assume that that [word 'placenta'] wasn't there on the day this happened, for just a minute.

* * *

BY MR. HEGARTY:

Q. Doctor, let's assume that the placenta wasn't there at the time. Then what mechanism does the hospital have?

A. The mechanism the only mechanism that I know of is what I see in the record that I have reviewed which has placenta written in hand form.

Q. If we take that out, there is no mechanism?

A. This is the mechanism that I read in the medical record.

Q. No, I know. But can you just assume for me just a moment, assume that that is not in the medical record, would they have no mechanism then?

A. If that is the assumption that is under consideration.

Q. So you agree, then? I mean—

A. I agree that if that is the assumption under consideration that the word placenta does not appear in the summary of delivery.

Q. And if it doesn't appear, then, they have no mechanism; is that right?

A. They have no expression of mechanism."

Following the close of evidence and immediately prior to closing argument, the lower court ruled in chambers that plaintiff could not make any inference in her closing that Lake Forest Hospital "in some way attempted to backtrack, [or] cover its butt" by placing the word "placenta" on Diana's medical chart at some unknown time after her birth. The court went on to note that "I will declare a mistrial if you do because it will be irreparable."

Later, during closing arguments, plaintiff's attorney referred to nurse Mills as "the hero" in this case, specifically stating, "I thought

---

[2]Rule 213(i) places a duty upon the parties "to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party." 166 Ill. 2d R. 213(i).

the hero in our case was Kim Mills, she changed the case entirely. It was going like this and all of a sudden it changed."

On appeal, defendant specifically contends that plaintiff's attorney's inference from the earlier use of Kim Mills' testimony to cross-examine Dr. Payton was highly improper and prejudicial and warranted a mistrial or a new trial. In support of this contention, defendant cites the following cases: *Green v. Cook County Hospital*, 156 Ill. App. 3d 826, 510 N.E.2d 3 (1987); *La Salle National Trust, N.A. v. Swedish Covenant Hospital*, 273 Ill. App. 3d 780, 652 N.E.2d 1089 (1995); *Coffey v. Brodsky*, 165 Ill. App. 3d 14, 518 N.E.2d 638 (1987); and *Ashpole v. Brunswick Bowling & Billiards Corp.*, 297 Ill. App. 3d 725, 697 N.E.2d 1238 (1998). However, our review of these cited cases establishes that none of them are apposite.

In *Green*, defense counsel, on cross-examination, asked plaintiff's principal witness, Dr. Alan Hirsh, a series of hypothetical questions regarding plaintiff's capabilities to do certain things, *e.g.*, "Would you be surprised if Mr. Green [plaintiff] would walk from where you are to where I am right now by himself without crutches?" *Green*, 156 Ill. App. 3d at 833. There was no evidence tendered subsequently that plaintiff could do the things asked about in the questions. As a result, in *Green*, the appellate court reversed and remanded the case. *Green*, 156 Ill. App. 3d at 833-34, 510 N.E.2d at 7-8. However, *Green* is inapposite on this issue because the instant case does not involve unperfected impeachment.

In *La Salle National Trust*, the trial court sustained an objection made by defense counsel to a hypothetical question posed by plaintiff's counsel to defendant's expert medical witness. On appeal, the appellate court stated "[c]learly this question called for speculation \*\*\* which the trial court is entitled to exclude." *La Salle National Trust*, 273 Ill. App. 3d at 792, 652 N.E.2d at 1097. Since the questions posed to Dr. Paxton in the instant case are not clearly speculative, *La Salle National Trust* is inapposite. *Coffey v. Brodsky*, 165 Ill. App. 3d 14, 518 N.E.2d 638, like *La Salle National Trust*, is a case involving speculative medical testimony. *Coffey* is therefore similar to *La Salle National Trust*, but inapposite to the instant case.

In *Ashpole*, the appellate court held that the trial court abused its discretion by allowing an undisclosed witness to testify. The appellate court reversed and remanded the case. *Ashpole*, 297 Ill. App. 3d at 729-30, 697 N.E.2d at 1241. *Ashpole* is inapposite because the witness, Kimberly Mills, was not undisclosed in the instant case.

On appeal, defendant further contends that Kim Mills' undisclosed surprise testimony and plaintiff's closing argument innuendo prejudiced defendant and warranted a new trial. Defendant cites *Hol-*

*ton v. Memorial Hospital*, 176 Ill. 2d 95, 679 N.E.2d 1202 (1997). However, in our view, *Holton* is inapposite on this issue. In *Holton* the Illinois Supreme Court wrote: "By vigorous cross-examination and through repeated remarks during closing argument, plaintiffs' counsel vehemently argued the possibility that the hospital had engaged in an attempt to cover up the nursing staff's negligence by falsifying testimony." *Holton*, 176 Ill. 2d at 121, 679 N.E.2d at 1213. Even so, in reversing the jury verdict for plaintiff in *Holton*, the supreme court indicated that neither the cross-examination nor the closing argument constituted the "real prejudice" in the case. The "real prejudice" in *Holton* was the following statement read by the trial judge to the jury just before closing statements:

> " 'Yesterday afternoon out of your presence, we conducted a hearing concerning Dr. Mark Jergens' testimony. I determined at the hearing that the doctor's testimony concerning his knowledge of a lawsuit pending against him was not true. I further determined that Ms. Hines and Mr. Sandberg knew the statement was false and had done certain things that encouraged the doctor to believe his answer was accurate. You may consider this fact in determining the credibility of Dr. Jergens' testimony.' " *Holton*, 176 Ill. 2d at 125, 679 N.E.2d at 1215.

*Holton* held that the trial court abused its discretion in bringing to the jury's attention its personal belief that Dr. Jergens had testified falsely and had been led to do so by defendant's attorneys. *Holton*, 176 Ill. 2d at 127, 679 N.E.2d at 1216. In our view, *Holton* is clearly inapposite on this issue.

On appeal, plaintiff contends that the description of Kim Mills as a "hero" in her closing argument was proper because (1) use of the phrase in closing was not objected to by defense counsel and (2) the phrase accurately described Kim Mills' testimony as it was both truthful and consistent. Plaintiff also posits that the comments were an appropriate argument on the credibility of the witnesses. Mills had been defendant's employee and defendant had represented to the jury during opening statements that Mills had written the word "placenta" in Diana's record. Plaintiff also argues that the Rule 213 disclosure of Kim Mills' testimony, including the facts that she was unaware that she was required to place a description of the placenta in the newborn chart at the time of Diana's birth and that she did not describe the placenta on Diana's newborn record, adequately apprised the defendant of the subject of her testimony. Plaintiff further argues that there could not have been any unfair surprise to the defendant.

Since defendant did not object during plaintiff's closing argument, it is our view that defendant waived this issue. *People v. Enoch*, 122

110

Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988). However, even were this claim of error by defendant not waived, it is our view that the trial court erred. Our review of the record in this case establishes that defendant's claim that plaintiff's counsel's closing argument amounted to prejudicial and reversible error lacks merit. Further, our review of the record establishes that the trial court abused its discretion in finding reversible prejudicial error, that would, in the alternative, compel a new trial on liability and damages.

Finally, Lake Forest Hospital has filed a conditional cross-appeal contending that, if the trial court did not properly enter judgment *n.o.v.*, or, in the alternative, order a new trial, remittitur would be compelled.

We disagree.

Relative to the remittitur, the trial court stated:

"In the event an appellate review of this matter reaches this question, the court would deny defendant's request for a remittitur in the amount of $6,000,000.00. If plaintiff has indeed proven all that she is required to prove and if indeed no unfair prejudice caused an unfair trial, then this court cannot say that plaintiff's award was the result of passion or prejudice. Her injuries are serious and lifelong. The verdict reasonably reflects those realities."

On appeal, it is our view that Lake Forest's conditional request for remittitur in the amount of $5,750,000 has no foundation and the request is denied.

For the foregoing reasons, we reverse those portions of the trial court's August 26, 1997, order granting defendant's posttrial motion for judgment notwithstanding the verdict and granting, in the alternative, defendant's posttrial motion for a new trial. Additionally, we reverse those portions of the September 12, 1997, judgment vacating, holding for naught and setting aside the previously entered judgment which had been entered on the jury's verdict in plaintiff's favor and instead entering judgment notwithstanding the verdict and judgment thereon in favor of defendant, as well as that portion of the September 12, 1997, judgment ruling that, in the event the judgment notwithstanding the verdict and judgment thereon entered in defendant's favor are reversed, set aside or vacated, defendant is entitled to a new trial on all issues.

The jury verdict of $10,944,000 as modified *nunc pro tunc* May 14, 1997, previously entered in this cause in favor of plaintiff and against defendant, is reinstated.

Judgment reversed.

GORDON and McNULTY, JJ., concur.