NO. 4-00-0898

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

ADAM WOOLUMS, DARRELL WOOLUMS, and ) Appeal from

BRENDA WOOLUMS, ) Circuit Court of

Plaintiffs-Appellants,   ) Macon County

v. ) No. 98L101

M. STEPHEN HUSS, M.D.; M STEPHEN HUSS, ) 

M.D., S.C., a Corporation; GORDON CROSS,) 

M.D.; and DECATUR RADIOLOGY PHYSICIANS ) Honorable

SERVICE CORPORATION, a Corporation, ) James A. Hendrian
,

Defendants-Appellees. )    Judge Presiding.

_______________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Plaintiffs, Adam Woolums, Darrell Woolums, and Brenda Woolums, appeal from the judgment of the circuit court of Macon County granting summary judgment to defendants M. Stephen Huss, M.D.; M. Stephen Huss, M.D., S.C., a corporation; Gordon Cross, M.D., and Decatur Radiology Physicians Service Corporation in plaintiffs' medical malpractice action.  Plaintiffs contend (1) the trial court erred in (a) striking an affidavit filed with their response to the motions for summary judgment, and (b) granting summary judgment and (2) abused its discretion in failing to consider amended and additional affidavits and its motion to reconsider the summary judgment order.  We affirm.

On March 27, 1995, 16-year-old Adam Woolums was brought to see Dr. Huss, an orthopedic surgeon, by his father, Darrell, complaining of pain in his right ankle and heel.  Adam reported he had fallen after a collision in gym class about a week before and injured the ankle.  Approximately a year before, he had injured the same ankle in a trampoline accident and it had never fully resolved as he continued to suffer intermittent discomfort in the ankle.  Adam's ankle and heel were not swollen or discolored but were extremely painful to the touch.  Dr. Huss diagnosed posttraumatic spastic right ankle and a sprain of the hind foot.  Traumatically induced sprains generally cause pain and swelling immediately though there can be a delay in swelling.  Dr. Huss interpreted Adam's reported lack of immediate pain as a mistake in reporting on Adam's part or the fact it was of such a low-grade nature at first that it did not bother him enough to acknowledge.  Dr. Huss ordered physical therapy.

Adam returned to Dr. Huss on March 31 and reported swelling and inability to bear weight on his right foot.  X rays taken from March 23-31 revealed nothing.  Dr. Huss continued to treat Adam's condition as a sprain.  

On April 7, Adam returned to Dr. Huss, who noted large black and blue swelling on the sides of Adam's hindfoot, the posterior portion of the foot.  Dr. Huss reported such discoloration can be delayed several days after a traumatic sprain.  Dr. Huss ordered a computerized tomography (CT) scan to see if there had been a bone injury to Adam's hindfoot because of his generally slow progress.  When he ordered the CT scan, Dr. Huss gave the radiologist, Dr. Cross, a clinical history of traumatic injury to the hindfoot.  The CT scan was performed and interpreted by Dr. Cross on April 7, 1995.  Dr. Cross' interpretation was nondisplaced comminuted fracture through the calcaneus, a bone near the ankle joint.  Dr. Huss then changed his diagnosis to traumatic fracture of the calcaneus.  

Adam showed little improvement and needed treatment for open blisters caused by the cast placed on his ankle.  Dr. Huss prescribed antibiotics as a precaution against infection from the blisters but discontinued them by April 19 to check for the existence of bacteria causing the swelling.  On April 21, Dr. Huss performed a fine needle aspiration in the soft and swollen tissue surrounding the ankle and found no evidence of any infection.

Dr. Huss continued to treat Adam and on May 10 diagnosed an infection.  He first diagnosed osteomyelitis on May 12 and ordered intravenous antibiotics.  While a sprain or fracture can be expected to heal through rest and/or physical therapy, osteomyelitis, a bone infection, is healed only through antibiotics.  As far as a complete cure of osteomyelitis, the sooner that antibiotics are started, the better.

Plaintiffs filed a complaint against defendants on June 19, 1998, alleging medical negligence.  Plaintiffs claimed Dr. Huss was negligent in failing to timely diagnose an infection of the right heel and failing to adequately treat the infection after plaintiff initially saw him on March 27, 1995.  Plaintiffs allege negligence on the part of Dr. Cross in failing to include infection as part of the differential diagnosis of the bone tissue and soft tissue changes allegedly present when he performed and interpreted the CT scan of Adam's ankle.  A second- amended complaint was filed on March 16, 1999, with essentially the same allegations but with the addition of certificates of merit of reviewing health care professionals, David Schurman, M.D., an orthopedic surgeon, and Lynne Steinbach, M.D., a radiologist, pursuant to section 2-622(a)(1) of the Code of Civil Procedure.  735 ILCS 5/2-622(a)(1) (West 1998).

On July 12, 1999, the trial court entered a case- management order pursuant to Supreme Court Rule 218 (166 Ill. 2d R. 218).  The scheduling order set December 15, 1999, as the deadline for plaintiffs' disclosure of opinion witnesses and March 31, 2000, as the defendants' deadline.  The trial court never modified the case-management order nor does evidence show an agreement between the parties to modify the order.  No opinion witnesses were ever disclosed by plaintiffs, and in response to interrogatories propounded by defendants they stated their identity had not yet been determined.  Defendants disclosed their opinion witnesses on March 31, 2000.

Discovery depositions of defendants were taken on March 28, 2000.  Thereafter, transcripts of these depositions were attached to the summary judgment motions of Dr. Huss and Dr. Cross filed April 10 and April 11, respectively.  The motions were set for hearing on May 8.

On April 19, plaintiffs filed a motion to reset the case-management schedule.  Written responses to that motion were filed by defendants but the motion was never set for hearing.  Plaintiffs filed written responses to Dr. Huss' and Dr. Cross' motions for summary judgment on May 1 and May 3, respectively.  They included affidavits from Drs. Schurman and Steinbach.

Dr. Huss received plaintiffs' response to his motion for summary judgment on Thursday, May 4, 2000.  On Friday, May 5, he faxed plaintiffs a copy of a motion to strike Dr. Schurman's affidavit, which he intended to file on Monday, May 8, the day of the hearing.  The motion pointed out the insufficiencies of the affidavit, including failure to comply with the requirements of Rule 191(a) (145 Ill. 2d R. 191(a)).  Dr. Cross joined in that motion at the hearing.

On May 8, the trial court heard arguments on defendants' motion to strike and their motions for summary judgment.  Before commencing argument, the trial court asked plaintiffs' counsel if they were seeking a continuance or if they had any motions pursuant to Rule 191(b) on file (145 Ill. 2d R. 191(b)).  Plaintiffs sought no continuance, nor did they file a motion pursuant to Rule 191(b) stating they were unable to obtain necessary affidavits.  Plaintiffs never asked for leave to amend or supplement Dr. Schurman's affidavit.  Instead, they stood on Dr. Schurman's and Dr. Steinbach's affidavits and argued why summary judgment was not proper as to either defendant.  

At the conclusion of the hearing, the trial court took the matter under advisement as well as plaintiff's motion to reset the case-management schedule.  Plaintiffs requested leave to submit additional legal authority with regard to Dr. Cross' motion for summary judgment.  The trial court granted this request.  Plaintiffs then filed a written response to Dr. Huss' motion to strike on May 15 and attached a "supplemental affidavit" by Dr. Schurman to this written response.  The trial court never granted leave to file the supplemental affidavit, nor was such leave ever sought.

The trial court issued a memorandum order on May 31 striking Dr. Schurman's original affidavit pursuant to Supreme Court Rule 191(a) as being too speculative to form the basis for the orthopedic opinions expressed therein.  The court found, because such testimony would be inadmissible at trial, summary judgment was appropriate as to Dr. Huss.  As to Dr. Cross, the court granted summary judgment in his favor also because no expert testimony was offered to establish that a breach of the radiologist's standard of care contributed to the injury plaintiffs alleged.  

On June 29, plaintiffs filed a timely motion to reconsider and vacate the summary judgment orders.  To this motion plaintiffs attached a new affidavit from Dr. Schurman as well as an affidavit from radiologist Dr. Phillip Lang.  The trial court held a hearing on this motion on September 13, 2000, and denied it.  This appeal followed.

Plaintiffs first argue the trial court erred in striking Dr. Schurman's original affidavit.  Plaintiffs contend the motion to strike should not have been heard at all on May 8 as it was filed that day and, thus, a hearing on it was untimely pursuant to local court rule 2.1(f), which provides:

"Time of Notice.  Unless otherwise ordered by the court, notice by personal service or by U.S. Mail shall be made not less than fourteen (14) days prior to the hearing." 
6th Judicial Cir. Ct. R. 2.1(f) (eff. November 1, 1992.)

When a party moves to strike an affidavit filed in summary judgment proceedings, it is that party's duty to bring his motion to the attention of the trial court and to get a ruling on the motion.  Failure to obtain such a ruling will operate as a waiver of the objections to the affidavit.  
Intercontinental Parts, Inc. v. Caterpillar, Inc.
, 260 Ill. App. 3d 1085, 1090, 631 N.E.2d 1258, 1263 (1994).  

Dr. Huss attempted to give plaintiffs as much notice as possible for his motion to strike.  He filed his motion for summary judgment on April 10 and set it for hearing on May 8.  Plaintiffs did not file a response to the motion until May 1, including Dr. Schurman's affidavit, which was not received by Dr. Huss until Thursday, May 4.  Dr. Huss then faxed plaintiffs' attorneys his motion on Friday, May 5.  The motion to strike pointed out insufficiencies in the affidavit pursuant to Supreme Court Rule 191(a).  

The evidence before the trial court on the day of the hearing included Dr. Huss' deposition testimony and Dr. Schurman's affidavit.  Plaintiffs should not have been surprised when Dr. Huss attacked the sufficiency of the affidavit presented in opposition to his motion for summary judgment.  Plaintiffs should have been aware their affidavit would be examined by the trial court and that the court would consider only affidavits complying with Rule 191(a).  Dr. Huss would not even have needed to file a motion to strike but could merely have argued the insufficiencies of the affidavit during the hearing.  Instead, plaintiffs benefitted from advance notice of exactly what deficiencies Dr. Huss would claim against Dr. Schurman's affidavit.  Plaintiffs were not harmed by failure to comply with local rules on setting motions for hearing.

Plaintiffs argue they were not allowed leave to continue the hearing to correct Dr. Schurman's affidavit.  However, no attempt was made by plaintiffs to gain additional time to obtain sufficient affidavits in view of the objections raised by the motion to strike.  At the outset of the hearing, the trial court itself raised this issue with plaintiffs.

"THE COURT: I don't have plaintiff's [
sic
] motion--Mr. Lumb, have you filed any motion or affidavit under Rule 191 to continue these matters?  

MR. LUMB: Actually what I did, I filed affidavits from my consultants, who I hoped to make testifying experts, and then the matter requested to modify case[-]management schedule.  I responded to summary judgments with affidavits from experts under Rule 11A-1(a)(b).  I didn't need information from other parties.  It wasn't under my control.  I needed my experts to have time to read defendant's depositions.  They weren't deposed until March 28, which is essentially the crux of the matter.  I was operating under the distinct impression, good-faith belief there was agreement to adjust the 213 disclosure after the defendants were depose[d], but within the maximum time to keep the pretrial date the same; but I did know I had to be safe, and filed responses with affidavits."

Plaintiffs elected to stand on the affidavit of Dr. Schurman rather than request a continuance under Rule 191(b).  Because no such relief was requested, the discretion inherent in the trial court in the determination of motions for continuances was not abused.  
Delgatto v. Brandon Associates, Ltd.
, 131 Ill. 2d 183, 195, 545 N.E.2d 689, 695 (1989)

In addition to their argument that Dr. Schurman's affidavit should be stricken as it does not comply with Rule 191, defendants argued it should be stricken as he was not timely disclosed as an expert opinion witness pursuant to Supreme Court Rules 213 and 218 (177 Ill. 2d R. 213; 166 Ill. 2d R. 218).  The trial court refused to strike the affidavit on that ground and defendants argue it here simply as an alternative way for this court to uphold striking Dr. Schurman's affidavit.  While the record indicates plaintiffs failed to comply with discovery in a timely manner across the board, we will not uphold striking Dr. Schurman's affidavit on that ground as it can be upheld substantively.

Plaintiffs argue Dr. Schurman's original affidavit was sufficient to withstand attack on the basis of being speculative and not specific.  The sufficiency of affidavits offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191.  
Purtill v. Hess
, 111 Ill. 2d 229, 241, 489 N.E.2d 867, 872 (1986).  

Rule 191 is satisfied "if from the document as a whole it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents." 
 
Burks Drywall, Inc. v. Washington Bank & Trust Co.
, 110 Ill. App. 3d 569, 576, 442 N.E.2d 648, 654 (1982).  The granting of a motion to strike a Rule 191 affidavit is within the sound discretion of the trial court.  
Lake County Trust Co. v. Two Bar B, Inc.
, 238 Ill. App. 3d 589, 599, 606 N.E.2d 258, 265 (1992).  

Rule 191 provides in pertinent part:

"Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirma-tively show that the affiant, if sworn as a witness, can testify competently thereto.  If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used."  145 Ill. 2d R. 191(a).

Dr. Schurman's affidavit states Dr. Huss deviated from the applicable standard of care by (a) failing to include infection in his differential diagnosis on and after March 27, 1995; (b) failing to rule in or rule out infection on or after March 27, 1995; (c) failing to timely diagnose infection; and (d) failing to timely begin appropriate antibiotic treatment.

Plaintiffs acknowledge an expert's opinion cannot be based on conjecture or speculation but must be given on facts assumed to be true, but they note the actual truth of the facts is later to be determined by the trier of fact.  
Murphy v. General Motors Corp.
, 285 Ill. App. 3d 278, 282, 672 N.E.2d 371, 373 (1996).  They argue Dr. Schurman's affidavit is virtually identical to one in 
Brooks v. Illinois Masonic Hospital & Medical Center
, 240 Ill. App. 3d 521, 523-25, 608 N.E.2d 483, 485-87 (1992), which was found to be sufficient to withstand a motion for summary judgment.  In 
Brooks
, the expert doctor's affidavit stated the defendant doctor concluded the plaintiff's hips were normal at birth; another doctor later found congenital hip dysplasia.  
Brooks
, 240 Ill. App. 3d at 522, 608 N.E.2d at 485.  Based on his review of the record, the expert doctor concluded the plaintiff suffered from the hip disorder at the time of birth; the condition should have been discovered by a qualified doctor; failure to discover was a deviation from the standard of care; and upon proper discovery, much surgical intervention could have been prevented.  
Brooks
, 240 Ill. App. 3d at 524, 608 N.E.2d at 486.

Rather than being identical to the affidavit in 
Brooks
, however, Dr. Schurman's affidavit does not state any facts to indicate infection was either present or discernable to Dr. Huss on and after March 27.  Instead, the affidavit states Dr. Huss deviated from the standard of care by failing to timely diagnose and treat infection, which may not have shown any signs of being present on March 27, 1995.  

 The problem is Dr. Schurman relies on a fact not in evidence: a CT report communicating radiological suspicions of osteomyelitis.  Dr. Schurman contends Dr. Huss should have taken certain steps to verify the existence of osteomyelitis and treat it but the fact is he did not receive such a report.  Further, Dr. Schurman is not qualified to and does not make assertions that the CT plates showed osteomyelitis and that Dr. Huss should have seen this, too; nor does he state any other symptoms in evidence in the record should have made Dr. Huss test for and treat osteomyelitis.

While an expert witness at trial may give opinion testimony without disclosing the facts underlying his opinion (
Wilson v. Clark
, 84 Ill. 2d 186, 194, 417 N.E.2d 1322, 1326 (1981)), the same is not true of affidavits submitted in summary judgment proceedings.  
Kosten v. St. Anne's Hospital
, 132 Ill. App. 3d 1073, 1079-80, 478 N.E.2d 464, 468 (1985).  Rule 191(a) is specific in mandating affidavits not consist of conclusions but set forth facts admissible in evidence.  145 Ill. 2d R. 191(a).  Affidavits in opposition to motions for summary judgment must consist of facts admissible in evidence as opposed to conclusions and conclusory matters may not be considered in opposition to motions for summary judgment.  
O'Rourke v. Oehler
, 187 Ill. App. 3d 572, 585, 543 N.E.2d 546, 555 (1989).  

The trial court did not abuse its discretion in striking Dr. Schurman's affidavit in light of its conclusory nature.  Dr. Schurman's affidavit was also stricken in regard to Dr. Cross as it purported to state Dr. Schurman was familiar with the appropriate standard of care for radiologists when Dr. Schurman is not a radiologist.

Plaintiffs next contend the trial court erred in granting the motions for summary judgment of defendants Dr. Huss and Dr. Cross.  Dr. Huss argues there is no case against him where there is no competent affidavit establishing his breach of the applicable standard of care.  Dr. Cross argues there is no causation shown between any actions he took in reading the CT scan and communicating his findings to Dr. Huss and the injuries allegedly incurred by Adam. 

Summary judgment is appropriate when the pleadings, depositions, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998).  When ruling on a motion for summary judgment, a trial court must view all evidence in the light most favorable to the nonmovant.  
Williams v. Covenant Medical Center
, 316 Ill. App. 3d 682, 687-88, 737 N.E.2d 662, 667 (2000), citing 
Rotzoll v. Overhead Door Corp.
, 289 Ill. App. 3d 410, 413, 681 N.E.2d 156, 158 (1997).

In medical malpractice cases, plaintiffs have an affirmative duty to come up with expert testimony supporting their case and failure to do so will justify entry of summary judgment against them.  
Northrop v. Lopatka
, 242 Ill. App. 3d 1, 8, 610 N.E.2d 806, 812 (1993).  Summary judgment is proper in a medical malpractice case only where the plaintiff has failed to demonstrate a present ability to offer competent expert testimony on the applicable standard of medical care.  
Smock v. Hale
, 197 Ill. App. 3d 732, 741, 555 N.E.2d 74, 80 (1990).  Grants of summary judgment are reviewed 
de
 
novo
.  
Williams
, 316 Ill.  App. 3d at 688, 737 N.E.2d at 667.

Evidence that shows to a reasonable degree of certainty that negligent delay in diagnosis or treatment lessened the effectiveness of treatment is sufficient to establish proximate cause.  
Holton v. Memorial Hospital
, 176 Ill. 2d 95, 115, 679 N.E.2d 1202, 1211 (1997).

Plaintiffs contend Dr. Cross deviated from the required standard of care of a radiologist by failing to alert Dr. Huss to the likely presence of osteomyelitis when he read the CT scan.  Dr. Huss testified in his deposition if he were informed of such a possibility of infection, he would perform certain tests and undertake certain procedures to check for osteomyelitis and then would treat the patient accordingly.  Thus, they contend Dr. Huss was not informed of a condition that may have effected the course of treatment he provided Adam.  

Dr. Cross argues the questions put to Dr. Huss at his deposition were entirely hypothetical as to what he would do if he suspects osteomyelitis in a patient either from his own clinical observations or if a radiologist reports it as a diagnostic differential.  In addition, Dr. Huss was also asked specifically what he would have done if Adam's CT scan interpretation had also included cortical destruction, low bone density, deep soft-tissue swelling and bone destruction, and Dr. Huss stated each case would have to be looked at individually but, in this case, there was sufficient evidence on the scan with fracture lines that his diagnosis was supported and he did not need to look for "every other possible thing that there could ever be" and he would not have changed his course of treatment.  Thus, Dr. Cross argues plaintiffs have failed to show causation from his actions in interpreting the CT scan and Dr. Huss' treatment of Adam.  

Plaintiffs argue Dr. Cross cannot rely on Dr. Huss' testimony that he would not have changed his course of treatment of Adam, even if he had been informed of the existence of infection, to show a lack of proximate cause for summary judgment purposes.  Whether Dr. Huss' treatment would have remained the same had he been informed of an infection is a question of fact for a jury to determine.  See 
Suttle v. Lake Forest Hospital
, 315 Ill. App. 3d 96, 104-05, 733 N.E.2d 726, 733 (2000).

Plaintiffs contend the decision in 
Suttle
 is dispositive of this issue.  The 
Suttle
 case did not involve summary judgment but was an appeal from a judgment 
n.o.v.
 in favor of the defendant.  In 
Suttle
, at the time of delivery of the infant plaintiff, the doctor suspected a problem with the placenta and sent it to the defendant's pathology lab for analysis.  
Suttle
, 315 Ill. App. 3d at 99, 733 N.E.2d at 728-29.  The pathology report, indicating the infant had incurred blood loss due to the problem with the placenta, did not get to the infant's medical file until two days later.  
Suttle
, 315 Ill. App. 3d at 99, 733 N.E.2d at 729.  

The infant's pediatrician was unaware of the problem.  When the infant had breathing difficulties, she was diagnosed with respiratory distress syndrome.  Her blood pressure was never taken before she was transferred to another facility, where his blood pressure was taken upon arrival and she was immediately given a transfusion.  The infant had to be treated for circulatory, liver, and kidney problems due to her substantial blood loss.  
Suttle
, 315 Ill. App. 3d at 100, 733 N.E.2d at 729.  

The defendant argued proximate cause was not proved because the pediatrician testified he would not have treated the infant differently had he been aware of the problem with the placenta.  However, there was also testimony the doctor diagnosed respiratory distress because he was unaware of the placental problem.  Thus, there was an actual factual dispute as to what the doctor would have done had he known of the condition of the placenta.  
Suttle
, 315 Ill. App. 3d at 104, 733 N.E.2d at 732.  The court in 
Suttle
 then determined the question of whether the doctor's treatment would have remained the same was a question of fact for the jury.  
Suttle
, 315 Ill. App. 3d at 104-05, 733 N.E.2d at 733.  

Suttle
 differs from the instant case, however, in that in 
Suttle
 there existed a specific condition that went undiagnosed or uncommunicated.  In this case, no evidence of a specific condition, osteomyelitis, has been shown to have existed at the time Dr. Cross took the CT scan.  If the condition did not exist at that time, there was nothing to diagnose and communicate or misdiagnose and fail to communicate.  In her affidavit, Dr. Steinbach stated Dr. Cross failed to comply with the applicable standard of care in failing to include the infection as a differential diagnosis after reading the April 7, 1995, CT scan.  However, Dr. Huss ordered a fine needle aspiration on April 21, which indicated no infection then existed and it is undisputed such an infection would not have gone away on its own.  

In addition, there is a gap in the causation plaintiffs attempt to show as Dr. Steinbach's affidavit was submitted to establish the applicable standard of care and Dr. Schurman's affidavit was used to show how a breach of that standard caused Adam's injuries.  However, Dr. Schurman's affidavit was stricken and, without it, no causation could be established against Dr. Cross.  

As to Dr. Huss, once Dr. Schurman's affidavit was stricken, no evidence suggested he had breached the applicable standard of care and plaintiff could not establish a 
prima
 
facie
 against him.  Dr. Huss testified he had clinical evidence as well as the CT scan report to support his diagnosis of first sprain and then calcaneus fracture.  There was no reason for him to rule out every other possibility known to medical science when he had support for his diagnosis.

Plaintiffs have failed to offer competent testimony on the applicable standard of care regarding Dr. Huss and have failed to offer proof of causation as to Dr. Cross and, therefore, summary judgment for both defendants is proper.

Finally, plaintiffs contend the trial court abused its discretion in failing to allow them to amend or correct Dr. Schurman's affidavit and erred in denying their motion to reconsider the orders granting summary judgment to defendants.  A trial court's decision on a motion to reconsider will not be disturbed absent abuse of discretion.  
Williams
, 316 Ill. App. 3d at 693, 737 N.E.2d at 671.  Petitions to vacate summary judgment are addressed to the equitable powers of the court and should be granted or denied in the interest of justice and fairness.  
Kirk v. Michael Reese Hospital & Medical Center
, 275 Ill. App. 3d 170, 173, 655 N.E.2d 933, 935 (1995).

The intended purpose of a petition to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the first hearing, changes in the law, or errors in the court's previous application of existing law.  
Gardner v. Navistar International Transportation Corp.
, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991).  Submission of new matter on a motion to reconsider summary judgment lies in the discretion of the trial court and should not be allowed absent a reasonable explanation of why it was not available at the time of the original hearing.  
Delgatto
, 131 Ill. 2d at 195, 545 N.E.2d at 695.

Plaintiffs contend the trial court's denial of their motion to reconsider is unfair.  The motions for summary judgment were filed on April 10 and 11, 2000.  Plaintiffs thereafter filed a motion to reset the case-management schedule on April 19, which was never set for hearing.  Plaintiffs filed written responses to the motions for summary judgment on May 1 and 3, including Dr. Schurman's first affidavit and Dr. Steinbach's affidavit.  At the hearing on the motions on May 8, plaintiffs requested additional time for the specific purpose of "fil[ing] additional authority regarding causation to the court."  The court granted this request but gave plaintiffs no authority to produce new affidavits.

On May 12, plaintiffs filed a written response to the motion to strike Dr. Schurman's affidavit and requested the summary judgment motions be continued or denied and, alterna-tively, that leave be granted to file an amended affidavit by Dr. Schurman.  No hearing was scheduled on these requests and the trial court granted summary judgment to both defendants on May 31.    Plaintiffs then filed their motion to reconsider and attached a third affidavit by Dr. Schurman, which was very detailed, and a very detailed affidavit by Dr. Lang, a radiologist.  Plaintiffs contend these affidavits not only withstand defendants' motions for summary judgment but affirmatively prove their case.  

Plaintiffs have ignored the standard for motions to reconsider.  The purpose of a motion to reconsider is not to reiterate arguments already made, nor to add new evidence that could have been produced earlier.  There is no indication from plaintiffs why they could not have produced the detailed affidavits of Dr. Schurman or Dr. Lang earlier.  

Plaintiffs rely on the 
Kirk
 case in support of this court equitably deciding to allow them to file new affidavits.  In 
Kirk
, no affidavits or expert opinions were offered in opposition to a motion for summary judgment.  The motion was granted and the plaintiff quickly changed attorneys.  The new attorney found an expert and presented an affidavit from this witness.  
Kirk
, 275 Ill. App. 3d at 171-72, 655 N.E.2d at 935.  The court vacated summary judgment and remanded to reconsider the summary judgment motion taking into account the affidavit of the plaintiff's new expert witness.  
Kirk
, 275 Ill. App. 3d at 174, 655 N.E.2d at 936.  The court based its decision on equitable grounds to save plaintiff from his apparently inept first attorney.

In this case, however, plaintiffs have proceeded with the same attorney, who has given no reason why he could not have produced the proffered affidavits earlier; nor did he request time to do so.  As the trial court noted:

"To indicate that you were denied the opportunity to supplement or correct existing deficiencies in your affidavits, *** at the outset [of the May 8 hearing,] I did ask you if you had filed any affidavits or motions under Rule 191.  You responded by saying that, uh, you responded to the motion for summary judgment with affidavits that you didn't need any further information from any other party.  And now it is only after the motions for summary judgment have been granted that you are claiming, 1, a denial of the opportunity to supplement, and 2, that the [c]ourt should consider new affidavits and that is just not permissible under the rule.  Why you chose to proceed I don't know.  It is your choice, your tactic, and that's fine.  But the fact of the matter is you were given that opportunity and decided *** to stand on the affidavit."

The trial court did not abuse its discretion in denying plaintiffs' motion to reconsider.

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed. 

McCULLOUGH, J., concurs.

STEIGMANN, P.J., specially concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

While I concur, I write separately to state my opinion that the supreme court needs to address Rule 191 insofar as it pertains to expert opinions.  

In 
Wilson
, 84 Ill. 2d at 194, 417 N.E.2d at 1326-27, the supreme court adopted Federal Rules 703 and 705 (Fed. Rs. Evid. 703, 705) and held that an expert witness may give an opinion at trial without disclosing the facts underlying that opinion.  In such a case, opposing counsel on cross-examination may elicit the facts underlying the expert opinion, if he so chooses.  
Wilson
, 84 Ill. 2d at 194, 417 N.E.2d at 1326-27.  Thus, under 
Wilson
, an expert may render an opinion unless it is shown to be 
not
 fact based. 

On the other hand, Rule 191, which came into existence many years before the supreme court decided 
Wilson
 (see Ill. Ann. Stat., ch. 110A, par. 191, Committee Comments, at 194 (Smith-Hurd 1985) (Rule 191 "is former Rule 15, as it existed before 1964, without change in substance")), mandates that affidavits in support of or in opposition to motions for summary judgment (1) be made on the personal knowledge of the affiant and (2) set forth facts admissible in evidence, not conclusions.  145 Ill. 2d R. 191(a).

Thus, the admission of an expert opinion under Rule 191 at the summary judgment stage requires a greater showing of foundation than is required for admission of the same expert opinion at trial.  No sound basis for this inconsistency exists.  I recognize that in 
Kosten
, 132 Ill. App. 3d at 1079-80, 478 N.E.2d at 468, the First District Appellate Court held that the rule set forth in 
Wilson
 does not apply to summary judgment proceedings because "[t]he affidavit cannot be cross-examined as can a witness at trial."  I also recognize that in 
Northrop
, 242 Ill. App. 3d at 8, 610 N.E.2d at 812, this court followed 
Kosten
 "in the absence of any direct statement by the supreme court."  However, I question the court's reasoning in 
Kosten
.  

Although an affidavit obviously "cannot be cross-examined," a party prior to trial may nonetheless challenge the admissibility of an expert opinion contained within an affidavit by filing a motion 
in
 
limine
 to exclude the expert opinion.  See 
People v. Owen
, 299 Ill. App. 3d 818, 822, 701 N.E.2d 1174, 1177-78 (1998) ("Motions 
in
 
limine
 are commonly used to obtain a pretrial order excluding inadmissible evidence and barring any questioning of witnesses regarding such evidence"); 
First Midwest Trust Co. v. Rogers
, 296 Ill. App. 3d 416, 426-27, 701 N.E.2d 1107, 1113-14 (1998) (trial court erred by denying the plaintiff's motion 
in
 
limine
, which sought to bar defense expert's testimony on the ground that it was based on unreliable data).  In addition, a party may depose an affiant to test the facts underlying the expert opinion contained in an affidavit.  See 166 Ill. 2d R. 206. 

Given that motions 
in
 
limine
 provide an opportunity to litigate the admissibility of expert opinions prior to trial, 
Wilson
 ought to apply to Rule 191 affidavits at the summary judgment stage.  Consistent with the supreme court's holding in 
Wilson
, the trial court should ask only two questions when evaluating an expert opinion contained in a Rule 191 affidavit filed in support of, or in opposition to, a summary judgment motion:

     (1)  If called to testify at trial, would the affiant be competent and qualified to do so?; and  

     (2)  Would the affiant's testimony regarding the material contained in the affidavit be admissible at trial? 

If the answer to each of the above two questions is "yes," the trial court should then ask the following question:  When viewed in a light most favorable to the nonmovant, does the affidavit--together with the pleadings, depositions, and admissions--show that a genuine issue of material fact exists?  See 
Williams
, 316 Ill. App. 3d at 688, 737 N.E.2d at 667.

This view is consistent with case law explaining the function and purpose of a summary judgment motion and affidavits both in support of, and in opposition to, that motion.  See 
Purtill
, 111 Ill. 2d at 241, 489 N.E.2d at 872 (Rule 191 is satisfied if it appears from the whole of the documents that the affiant would be competent to testify to the contents of the affidavit if called upon at trial); 
Kugler v. Southmark Realty Partners III
, 309 Ill. App. 3d 790, 795, 723 N.E.2d 710, 714 (1999).  Demanding more of a Rule 191 affidavit filed at the summary judgment stage subverts the purpose of a summary judgment motion, which "is not to try a question of fact, but simply to determine whether a question of fact exists."  
Koziol v. Hayden
, 309 Ill. App. 3d 472, 476, 723 N.E.2d 321, 323 (1999).  Thus, at the summary judgment stage, a plaintiff is not required to prove his case.  
Koziol
, 309 Ill. App. 3d at 476, 723 N.E.2d at 323.  Moreover, as the supreme court stated in 
Purtill
, 111 Ill. 2d at 250, 489 N.E.2d at 876, "summary judgment is proper in a medical malpractice case only where the plaintiff has failed to demonstrate an ability to offer, through competent expert testimony, evidence at trial on the applicable standard of medical care."        

Although the supreme court has not yet definitively addressed Rule 191 in light of 
Wilson
, the court has twice discussed Rule 191 in 
dicta
 consistent with the First District's opinion in 
Kosten
.  The first such case was 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 462-63, 665 N.E.2d 826, 838-39 (1996), where the court discusses Rule 191 in 
dicta
 as requiring that an expert's affidavit (1) be based on personal knowledge, (2) "set forth the facts on which the opinion is based with specificity," and (3) "consist of admissible facts rather than conclusions."  The second such case is 
Majca v. Beekil
, 183 Ill. 2d 407, 422-24, 701 N.E.2d 1084, 1091-92 (1998), where the court first rejected the plaintiffs' claims that a cause of action existed for fear of contracting acquired immune deficiency syndrome (AIDS) but then went on to indicate that the trial court properly struck an expert's affidavit (submitted in support of the failed cause of action) because it contained legal conclusions unsupported by facts.  Despite my earlier-stated misgivings about applying Rule 191 to expert opinions in view of 
Wilson
, I feel compelled to concur in the majority's opinion because of the foregoing language in 
Bucheleres
, as well as the 
dicta
 in 
Majca
. 

If the supreme court, for policy reasons, concludes that 
Wilson
 should not apply to Rule 191 affidavits, it should explicitly say so.  However, as things now stand, this important area of the law appears to be governed by (1) appellate court decisions that rest on questionable analytical foundations, and (2) offhand references in two supreme court decisions that contain no analysis at all.