25 January 2000

NO. 4-99-0235

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JOHN KOZIOL, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Champaign County

WILLIAM HAYDEN, d/b/a GLENN POOR'S TV ) No. 96L64

SERVICE, and GLENN POOR'S, INC., ) 

Defendants-Appellees, ) 

and ) 

WILLIAM HAYDEN, d/b/a GLENN POOR'S TV ) 

SERVICE, )

Counterplaintiff, )

v. ) Honorable

GLENN POOR's, INC., ) George S. Miller,

Counterdefendant. )
 Judge Presiding

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the 

court:

In February 1996, plaintiff, John Koziol, filed a complaint against defendants, William Hayden, d/b/a Glenn Poor's TV Service, and Glenn Poor's, Inc.  Plaintiff alleged that defendants negligently allowed an unnatural formation of ice to accumulate on the sidewalk leading up to defendants' premises, causing plaintiff to fall and injure himself.  In December 1998, defendants moved for summary judgment, arguing that plaintiff failed to adequately show he fell as a result of an unnatural accumulation of ice and snow.  In January 1999, the trial court granted summary judgment in favor of defendants, holding that a jury finding for plaintiff would be based on mere guesswork.  Plaintiff appeals, arguing that summary judgment was improper because the cause of plaintiff's fall constituted a question of fact for the jury.  We affirm.

I. BACKGROUND

According to plaintiff's complaint, in February 1996, 

he traveled to Glenn Poor's TV Service to shop for a video­cas

sette recorder.  As plaintiff walked along the concrete sidewalk leading to the store, he slipped on a layer of ice underneath the snow.  Plaintiff stated in a deposition that he fell backward, landing on his buttocks.  Plaintiff further stated that he injured his elbow and back.

After collecting himself, plaintiff got up and in

spected the sidewalk.  Plaintiff stated in a deposition that he observed a "patch of ice, *** relatively large, *** perhaps a few feet square."  Plaintiff further stated he "had snow all over" himself and walked inside to complain.  

During his deposition, counsel showed plaintiff a photograph of the sidewalk leading to the door and plaintiff identified the slab of concrete directly in front of the door as the one upon which he fell.
  Plaintiff stated that he fell "within arm's reach" of the door.

Defendants retained a structural and geotechnical engineer, John Frauenhoffer, to testify on their behalf. Frauenhoffer visited the scene of the accident and inspected the sidewalk and surrounding area.  He observed, and plaintiff does not dispute, that:

"[T]he *** [b]uilding has a covered concrete entrance slab approximately 8'6" wide north to south between the north side of the build

ing and the city sidewalk. ***  The 4'6" wide city sidewalk running east to west abuts the north side of the entrance slab.  

In general, the slabs generally slope downward from the building to the curb.  However, where the entrance meets the city sidewalk, an area exists where a section of the city sidewalk slopes downward toward the building.  The southwest corner is approxi

mately 5/8" lower than the northwest corner.  The northeast corner of the entrance slab section north of the service entrance is approximately [13/16"] lower than the north

west corner of the sidewalk section.

*** The concrete entrance slab slopes away from the door at approximately 5/8" per foot, which exceeds civil engineering stan

dards for entrance slab drainage.  Approxi

mately five feet from the door, there begins an area ranging from zero feet to approxi

mately two feet wide where water can pond, because the sidewalk slab is higher than the entrance slab, and the [c]ity sidewalk drains toward the entrance slab."

Frauenhoffer also rendered his professional opinion regarding the cause of plaintiff's fall, stating:

"At the location where [plaintiff] fell, the slope of the sidewalk exceeds standards for drainage, hence unnatural accumulations of ice cannot form for a distance of five feet from the door.  

Water which is shed from the mansard roof can pond approximately five feet from the door, trapped by the [c]ity sidewalk.  On the day of the accident, the weather was below zero degrees [Fahrenheit], hence no water was being shed.

On the day of the accident, the weather was windy, and there had recently been snow. [Plaintiff] was covered with snow subsequent to his fall and most likely fell due to an accumulation of snow."

Plaintiff retained an architect, Neil Strack, to testify on his behalf.  Strack admitted in his deposition that he did not dispute Frauenhoffer's measurements and observations of the sidewalk.  However, Strack disagreed as to Frauenhoffer's conclusions regarding the cause of plaintiff's fall.  Strack offered several possibilities as to how an unnatural accumulation of ice and snow could have formed in the area in which plaintiff fell.  Among his suggestions, Strack stated that the ice and snow could have accumulated because the store's entrance is on the north side of the building, making it susceptible to northwest winds that may cause eddy currents.  Strack further suggested that the "mansard" roof may have created too much shade, thus preventing the snow and ice from melting.  Finally, Strack suggested that the building was constructed too close to the street, allowing cars to possibly splash water onto the sidewalk.

In January 1999, the trial court granted summary judgment in favor of defendants.  The trial court held:

"To impose liability upon the defendants there must be a showing that plaintiff slipped and fell on an unnatural accumula-

tion of ice or snow.  There is no presumption of an unnatural accumulation that arises from the fact that plaintiff slipped and fell.  On the facts presented[,] a jury would be left to guess whether or not the ice or snow upon which plaintiff fell was natural or unnatu

ral.  The trier is not permitted to guess about a material fact."

II. ANALYSIS

At the summary judgment stage, plaintiffs are not re­

quired to prove their cases.  
Allegro Ser­vic­es, Ltd. v. Met­ro­

politan Pier & Exposition Authority
, 172 Ill. 2d 243, 256, 665 N.E.2d 1246, 1254 (1996).  The purpose of summary judg­ment is not to try a question of fact, but simply to deter­mine whether a ques­tion of fact ex­ists.  
Watkins v. Schmitt
, 172 Ill. 2d 193, 203, 665 N.E.2d 1379, 1384 (1996).  Because summary judg­ment is a dras­tic means of dispos­ing of liti­gation, the court has a duty to con­strue the record strictly against the movant and liberally in favor of the nonmoving party.  
Espinoza v. Elgin, Joliet & East­

ern Ry. Co.
, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995).  

Summary judg­ment should not be allowed unless the mov­

ing party's right to judgment is clear and free from doubt.  
In re Estate of Hoover
, 155 Ill. 2d 402, 410, 615 N.E.2d 736, 739 (1993).  Summary judg­ment is proper only where the pleadings, depo­sitions, and affi­davits demon­strate no genuine issue of material fact exists and the movant is enti­tled to judg­ment as a mat­ter of law.  735 ILCS 5/2-1005(c) (West 1998).  Ac­cordingly, where reason­able per­sons could draw divergent infer­ences from the un­disputed mate­rial facts or where a dispute exists as to a mate­

rial fact, summary judgment should be denied and the issue decid­

ed by the trier of fact.  
Espinoza
, 165 Ill. 2d at 114, 649 N.E.2d at 1326.  In determining whether the court properly grant­

ed summary judgment, the standard of review is 
de
 
novo
.  
Espinoza
, 165 Ill. 2d at 113, 649 N.E.2d at 1326.

Plaintiff alleges that he fell as a result of accumu

lated ice and snow on defendants' sidewalk.  Absent a contractual duty, a landowner generally owes no duty to remove or prevent natural accumulations of snow or ice.  
Fillpot v. Midway Air

lines, Inc.
, 261 Ill. App. 3d 237, 243, 633 N.E.2d 237, 241 (1994).  Rather, the landowner's duty is to "prevent an unnatural accumulation on his property, whether that accumulation is the direct result of the owner's clearing of the ice and snow, or is caused by design deficiencies that promote unnatural accumula

tions of ice."  
Webb v. Morgan
, 176 Ill. App. 3d 378, 382-83, 531 N.E.2d 36, 39 (1988).  Even when landowners voluntarily remove snow, they do not owe a duty to remove natural accumulations of ice underneath the snow.  
Watson v. J.C. Penney Co.
, 237 Ill. App. 3d 976, 978, 605 N.E.2d 723, 725 (1992).  Thus, to recover for a slip and fall on ice, plaintiff has the burden of affirma

tively proving the ice upon which he fell was an unnatural accumulation caused or aggravated by defendants.  
Fillpot
, 261 Ill. App. 3d at 243, 633 N.E.2d at 241; 
Webb
, 176 Ill. App. 3d at 382-83, 531 N.E.2d at 39. 

Plaintiff argues that the trial court erred in its finding that a jury determination as to the cause of snow and ice accumulation would amount to guesswork.  We disagree.  Strack's deposition testimony is rife with words and phrases such as "maybe," "there is a chance," "there is a possibility," "I have no way of knowing," and "I am making the assumption that ***."  While Strack offered a host of possibilities as to how the ice may have been formed, he could not, with any degree of certainty, state which, if any of them, actually caused the ice and snow to form. 

Defendants' motion for summary judgment in this case is similar to the one recognized in 
Celotex Corp. v. Catrett
, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 275, 106 S. Ct. 2548, 2553-54 (1986).  In that case, Celotex, the movant, could not prove its products did not cause plaintiff's injuries.  The Supreme Court found Celotex was nevertheless entitled to summary judgment because plaintiff, who had the burden of proof, likewise could not produce evidence showing that Celotex's product had in fact caused plaintiff's injury.  A 
Celotex
-type motion for summary judgment presents the rare situation when the burden of proof is essentially on the nonmovant.  See also 
Kimbrough v. Jewel Cos.
, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981); 
Webber v. Armstrong World Industries, Inc.
, 235 Ill. App. 3d 790, 795, 601 N.E.2d 286, 290 (1992).  

Even if some issue of fact is presented by a motion for summary judgment, if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court at trial and upon such evidence nothing would be left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered.  
Fooden v. Board of Governors of State Colleges & Universities
, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971); 
Bossman v. Village of Riverton
, 291 Ill. App. 3d 769, 780, 684 N.E.2d 427, 434 (1997).   With either a 
Celotex
-type motion or a 
Fooden
-type motion, it is essential that plaintiff be given adequate time to gather evidence.  
Celotex
, 477 U.S. at 322, 91 L. Ed. 2d at 273, 106 S. Ct. at 2552 ("adequate time for discovery"); 
Webber
, 235 Ill. App. 3d at 795, 601 N.E.2d at 290 ("[t]he discovery may establish that plaintiff does not have evidence of all the necessary elements of his case"); see 4 R. Michael, Illinois Practice §§38.4, 39.4, at 227, 255 (1989) (Civil Procedure Before Trial); 
cf.
 
Rotzoll v. Over

head Door Corp.
, 289 Ill. App. 3d 410, 681 N.E.2d 156 (1997).  

The present case satisfies the 
Fooden
 requirements.  The parties have taken discovery, and nothing indicates that any additional evidence could be presented at trial.  We agree with the trial court that upon this evidence, at trial, the trial court would be required to direct a verdict for defendants.  Under 
Fooden
, the same result should follow at the summary judgment stage.  See D. Laycock, 
Dispositive Pre-Trial Motions in Illinois--Sections 45, 48 and 57 of the Civil Practice Act
, 9 Loy. U. Chi. L.J. 823, 847 (1977-78); 4 R. Michael, Illinois Practice §40.2, at 267-69 (1989) (Civil Procedure Before Trial).
 
  
 Even if Strack could identify the source of the snow and ice accumulation with any degree of certainty, his theories cannot be equated to some proof of an unnatural accumulation as recognized by Illinois case law.  Plaintiff generalizes Strack's theories by arguing that a "defect in the premises" caused the ice and snow to accumulate.  Illinois courts have indeed found that a plaintiff may be entitled to recover where a defect in the premises created an unnatural accumulation.  See, 
e.g.
, 
Lapidus v. Hahn
, 115 Ill. App. 3d 795, 800-01, 450 N.E.2d 824, 828 (1983) (water dripped from leaky roof and collected in depression on porch);
  
Wolter v. Chicago Melrose Park Associates
, 68 Ill. App. 3d 1011, 1019, 386 N.E.2d 495, 500 (1979) (surface irregularities in parking lot); 
Stroyeck v. A.E. Staley Manufacturing Co.
, 26 Ill. App. 2d 76, 84, 167 N.E.2d 689, 692 (1960) (sidewalk con

structed on severe slope).  However, we conclude that Strack's  theories indicate no such defect.

One such defect alleged by plaintiff is the depression in the sidewalk whereby water can pond and turn to ice.  We need not address whether this depression constitutes a defect because, assuming that ice in fact existed in the depression, plaintiff failed to establish that ice in the depression caused his fall.  Plaintiff does not dispute that this depression was more than five feet from the defendants' door, while plaintiff admitted he fell within arm's reach of the door.

Other building defects alleged by plaintiff's expert as "defects" include placement of the building too close to the street and utilization of a "mansard" roof that creates excessive shade over the sidewalk.  Strack also characterized the placement of the front door on the northern side of the building as a "defect" because it failed to consider prevailing northwest winds and eddy currents.  Plaintiff fails to cite any case law charac

terizing these items as "defects" capable of causing an unnatural accumulation of snow or ice.  Further, our own analysis indicates that they are not.

Plaintiff also urges us to reject the well-settled  "natural-unnatural accumulation" distinction.  As plaintiff states in his brief, in the past, members of this court have agreed, opining that "no one understands the difference between a natural accumulation of ice and snow and an unnatural accumula

tion."  
Watson
, 237 Ill. App. 3d at 982, 605 N.E.2d at 727 (Knecht, J., dissenting); see also M. Polelle, 
Is the Natural Accumulation Rule All Wet?
, 26 Loy. U. Chi. L.J. 631 (1995).  However, as the majority stated in 
Watson
, we leave it to the legislature or the supreme court to make that determination.  
Watson
, 237 Ill. App. 3d at 978-79, 605 N.E.2d at 725. 

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.