NOTICE
Decision filed 10/01/15. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2015 IL App (5th) 140408

NO. 5-14-0408

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JUDY MULHOLLAND GRIFFIN, | ) | Appeal from the |
| as Special Administrator of the Estate of | ) | Circuit Court of |
| John E. Mulholland, Jr., Deceased, | ) | Randolph County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 12-L-41 |
| | ) | |
| JOSEPH A. COHEN and | ) | |
| JO-CO POOLS, INC., | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    John E. Mulholland, Jr., sustained fatal injuries in a September 14, 2010, motor vehicle accident with defendant Joseph A. Cohen, who was operating his vehicle in the course of his business, Jo-Co Pools, Inc. (Jo-Co Pools). The trial court granted summary judgment for Cohen and Jo-Co Pools, finding that the sole proximate cause of the accident was Mulholland's failure to stop at a stop sign.

1

¶ 2                                                    FACTS

¶ 3      This is a wrongful death case filed by Judy Mulholland Griffin, the special administrator of the estate of her father, John E. Mulholland, Jr.

¶ 4      The police report and accident reconstruction reports reveal the following facts. The accident occurred on September 14, 2010, at 1:26 p.m. Weather and road conditions were not at issue. The accident took place south of Chester on Illinois Route 3 at its intersection with Water Street. The speed limit in this portion of Route 3 is 55 miles per hour. Cohen was driving a 2001 Dodge Ram 2500 pickup truck. An 18-foot 2004 Brooks Brothers dual axle trailer was attached to the truck. A 2007 Bobcat T190 skid steer was loaded on the trailer. At the time of the accident, Cohen was working for his company, defendant Jo-Co Pools, Inc. The decedent was driving a 1995 Chevrolet S10 pickup truck.

¶ 5      Cohen was driving his truck southeast on Route 3 down a steep grade, approaching Water Street. Water Street has a T intersection with Route 3. The decedent was driving east on Water Street approaching the intersection with Route 3. There is no stop sign on Route 3. Water Street has a stop sign posted on either side of the road at the intersection. Therefore, Route 3 is the preferential highway and Water Street is the secondary road. The collision occurred in the northwest-bound lane of Route 3–not in Cohen's lane of travel. There were two witnesses to the collision and its aftermath−Rebecca Woodward and her son, Justin Woodward. The Woodwards were driving northwest on Route 3 approaching the Water Street intersection in the opposite direction of Cohen.

¶ 6    Cohen was deposed in this case by Griffin's attorney. Cohen testified that he purchased the truck about two months before the accident and that the odometer for the truck registered about 269,000 miles in September 2010. He testified that an employee inspected the truck but did not create a report of the inspection. The Jo-Co Pools employee was also responsible for inspecting the trailer. Cohen testified that he estimated the weight of the truck at 6000 pounds, the weight of the trailer at 3000 pounds, and the weight of the Bobcat at 5000 pounds. Cohen testified that he did not know the maximum weight the trailer could safely hold. He further testified that the brakes on his truck and trailer were working on the date of the accident. He testified that he adjusted the trailer brakes earlier that day after he loaded the Bobcat.

¶ 7    Cohen testified that shortly before the accident, he received a cell phone call from an employee. He reviewed his cell phone records and confirmed that he received this call at 1:24 p.m.–two minutes before the collision. Although his truck has a manual transmission, he testified that he was able to talk on his cell phone while shifting gears by holding the cell phone between his shoulder and ear. Cohen testified that he thinks he threw the phone down just before impact.

¶ 8    Cohen testified that he had started down the steep grade on Route 3 with his foot on the brakes, before he saw the decedent's truck. At the time that he saw the decedent's truck, he testified that his speed had diminished from 55 to 50 miles per hour. When asked at his deposition, Cohen could not pinpoint on a diagram or on a photograph of Route 3 where he was when he first saw the decedent's truck. However, he testified that he saw the decedent's truck before it reached the stop sign on Water Street. He claimed

that once he noticed decedent's truck, he did not stop looking at it, and that the decedent stayed within his field of vision. Cohen testified that the decedent did not stop at the stop sign. He testified that he believed that the decedent planned to turn left in front of him in order to travel northwest on Route 3. He claimed that after he recognized the danger, he fully depressed the brake pedal and the brakes locked up. Cohen testified that prior to the date of this accident, there were railroad ties stacked up on the right side of Route 3 near Water Street. Based on his memory of this railroad tie obstruction on the right side of Route 3, he testified that he made the decision to swerve to the left towards the decedent's truck. He testified that he did not actually look to the right and that he did not see any railroad ties on the right side of the road before he swerved to the left.

¶ 9    Cohen testified that about eight feet before impact, he saw the decedent slumped over in his truck towards the passenger door. He stated that he did not recall speaking to anyone at the scene of the accident, but talked to an Illinois state trooper at the hospital. Trooper Krack came to see him at the hospital and after speaking with him, Cohen testified that he signed a statement. When confronted by Griffin's attorney with omissions from this statement, Cohen acknowledged that he did not tell Trooper Krack that he was talking on his cell phone at the time of the accident, that he swerved left to avoid railroad ties, or that the decedent was slumped over in his truck before the collision.

¶ 10   The accident reconstruction report provided detailed measurements of tire marks left on the road and damage to the guardrail on the northwest-bound side of Route 3. The report supported Cohen's statement that his brakes were functioning at the time of the

accident. Nathan Shigemura, an accident reconstruction expert hired by Cohen, testified that in his opinion, Cohen was driving at 55.17 miles per hour at the point of perception of the danger, and possibly a few miles per hour faster than that. Additionally, he testified that if Cohen stayed in his lane of travel while applying his brakes, the vehicles would not have collided.

¶ 11    Rebecca Woodward was deposed in this case. She testified that at the time of the accident, she was traveling northwest on Route 3 towards Chester. She testified about the railroad tracks that run across Route 3 stating that the tracks are about 300 feet before the intersection with Water Street. Rebecca testified that just before she reached the railroad tracks, her son yelled, "Stop!" She does not know why, but she did not see the two trucks before the accident, nor did she see the two trucks collide. After the collision, she exited her vehicle and spoke with Cohen, who told her that he tried to avoid the decedent's truck, but that the truck "came out of nowhere."

¶ 12    Justin Woodward, Rebecca's son, was 16 years old at the time of the accident. Justin testified that he first saw the decedent's truck, and then he saw Cohen's larger truck. He testified that Water Street had one stop sign at its intersection with Route 3, but later acknowledged, after reviewing photographs, that there were two stop signs near the intersection. Justin testified that he thought that the decedent was traveling straight ahead, as he saw nothing to indicate that the decedent was going to turn left onto Route 3. During his deposition, he testified that the decedent did not stop at the intersection. However, when pressed by Griffin's attorney, Justin admitted that right after the accident when he spoke to police, he was not as certain, and that he told the police that he did not

5

think that the decedent stopped at the stop sign. Justin has no recollection that Cohen's truck was pulling a trailer loaded with equipment. He also testified that the collision occurred in the southeast lane of Route 3.

¶ 13    Randolph County coroner Randy Dudenbostel was deposed and provided information about his conversation with Cohen at the scene of the accident. Coroner Dudenbostel testified that Cohen told him that when his brakes locked up, the weight of his trailer pushed his truck into the oncoming lane of traffic. He also testified that Cohen told him that he looked the decedent in the face just before the collision.

¶ 14    In late March 2014, Cohen and Jo-Co Pools filed a motion for summary judgment. They argued that the decedent's failure to yield the right-of-way was the sole proximate cause of the accident, and that Cohen satisfied any duty he had to avoid the collision because he took an evasive action. In support of this argument, they cited section 11-904(b) of the Illinois Vehicle Code, which requires a driver who approaches a "stop intersection" to stop his vehicle. 625 ILCS 5/11-904(b) (West 2008). After stopping, the driver must yield the right-of-way to any other driver who has entered the intersection from a different road. *Id.* Cohen and Jo-Co Pools acknowledged that even though Cohen was on a preferential roadway, he did not have an absolute right-of-way. *Salo v. Singhurse*, 181 Ill. App. 3d 641, 643, 537 N.E.2d 339, 340-41 (1989).

¶ 15    After a hearing on the summary judgment motion, the trial court entered its order on June 19, 2014, finding that there was no issue of material fact, and that the decedent's failure to stop at the Water Street stop sign before entering Route 3 was the sole cause of the accident. In support, the court cited to the testimony of both Cohen and Justin

6

Woodward, who both testified that the decedent failed to stop at the stop sign. The court cited to a Fifth District Appellate Court case, *Salo v. Singhurse*, as legal support for its summary judgment.

¶ 16 Griffin filed a motion for rehearing arguing that the court erred in the application of existing law. The trial court denied the motion on August 5, 2014. Griffin filed her notice of appeal from both orders.

¶ 17                                     LAW AND ANALYSIS

¶ 18 On appeal, Griffin claims that the trial court erred in granting Cohen and Jo-Co Pools' motion for summary judgment, because there are outstanding issues of material fact. We agree.

¶ 19 Section 2-1005(c) of the Code of Civil Procedure provides that a party is entitled to summary judgment as a matter of law if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." 735 ILCS 5/2-1005(c) (West 2012).

¶ 20 Summary judgment is considered to be a drastic remedy and should not be granted unless the movant's right to judgment is without doubt. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 357, 726 N.E.2d 1171, 1176 (2000). The trial court must strictly construe all evidence in the record against the moving party and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986); *Koziol v. Hayden*, 309 Ill. App. 3d 472, 476, 723 N.E.2d 321, 323 (1999). If a reasonable person could reach different impressions from the undisputed material facts or if there is any material fact still disputed, then the trial court must deny

7

the motion for summary judgment. *Koziol*, 309 Ill. App. 3d at 476, 723 N.E.2d at 323. Appellate courts review summary judgment orders on a *de novo* basis. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992).

¶ 21 We first turn to the Illinois Vehicle Code section that applies in this case. Section 11-904(b) states:

> "[E]very driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another roadway or which is approaching so closely on the roadway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection, but said driver having so yielded may proceed at such time as a safe interval occurs." 625 ILCS 5/11-904(b) (West 2008).

Although the driver on a preferential road has the right-of-way and therefore has the right to expect that the driver from the secondary roadway with a stop sign will obey that stop sign, the right to proceed into the intersection is not absolute. *Twait v. Olson*, 104 Ill. App. 3d 191, 194, 432 N.E.2d 1244, 1247 (1982). The preferential driver "has a duty to keep a proper lookout, observe due care in approaching and crossing intersections, and drive as a prudent person would to avoid a collision when danger is discovered or, by the

8

exercise of reasonable care, should have been discovered." *Johnson v. May*, 223 Ill. App. 3d 477, 484, 585 N.E.2d 224, 229 (1992) (citing *Salo*, 181 Ill. App. 3d at 643, 537 N.E.2d at 341).

¶ 22    The trial court relied upon an appellate court opinion from this court, *Salo v. Singhurse*, as authority that the sole proximate cause was the decedent's failure to stop, and thus summary judgment for Cohen was proper. We find *Salo* distinguishable.

¶ 23    In *Salo*, the motor vehicle accident occurred at the intersection of an Illinois highway that intersected with a blacktopped road. *Salo*, 181 Ill. App. 3d at 642, 537 N.E.2d at 340. The intersection was marked with a flashing yellow light for drivers on the preferential highway. It was marked with stop signs for drivers on the secondary blacktopped road. Salo was driving on the preferential road, and as he approached the intersection, he glanced over and saw Singhurse's car approaching the stop sign. *Id.* Salo looked back at the road in front of him, proceeded through the intersection, and was struck in the middle of the passenger side of his car by Singhurse's car. *Id.* The collision occurred in the middle of the intersection. *Id.* Singhurse testified that she made a full and complete stop before entering the intersection and that she never saw Salo's car until impact. *Id.* An eyewitness, who was driving behind Salo, testified that Salo slowed down to allow a car in front of Salo to turn into a store just past the intersection. *Id.* The eyewitness testified that Singhurse made a rolling stop through the intersection before hitting Salo's vehicle. *Id.* The jury determined that Salo was entitled to damages, but that he was 60% at fault for the accident. *Id.*

9

¶ 24   On appeal, this court reversed the jury's apportionment of fault. *Id.* at 644, 537 N.E.2d at 341.  The court noted that by the time Salo was in the intersection, Singhurse was just pulling up to the stop sign and that Salo had the right to expect that Singhurse would stop at the stop sign.  *Id.* at 643, 537 N.E.2d at 341.  The court stated that Singhurse had not provided any evidence that her vision was obstructed or that somehow Salo's speed affected her ability to see Salo approach the intersection.  *Id.*  Consequently, the court concluded that the reasonable inference to be drawn was that Singhurse just was not looking and/or did not attempt to stop.  *Id.*  In finding that Singhurse was the sole cause of this accident, the court stated:

> "Singhurse had a duty to stop and yield the right-of-way to approaching cars. Instead she rolled into the intersection and hit Salo's car after he was already in the intersection at a time when there was nothing he could do to avoid the collision. Salo could not reasonably be expected to anticipate Singhurse entering the intersection in disregard of her duty to yield.  But for Singhurse running the stop sign or not looking, the collision would not have occurred." *Id.*

¶ 25   We find the *Salo v. Singhurse* case to be both procedurally and factually distinguishable from this case.  Procedurally, a motion filed before trial did not decide *Salo v. Singhurse*.  The case went to a jury for verdict.  Factually *Salo v. Singhurse* is different because Salo was already in the intersection when Singhurse rolled through the stop sign and struck his vehicle.  Additionally, although Salo saw Singhurse approaching the intersection, he did not see her drive through the stop sign.  Even if Salo had seen Singhurse roll through the stop sign, Salo had little to no opportunity to take evasive

10

action because his vehicle was already within the intersection. In this case, Cohen saw the decedent's truck well before the intersection. He saw the decedent's truck before it reached the Water Street stop sign, and then he saw the truck enter Route 3. Cohen was not yet to the intersection when the decedent entered the intersection. Therefore, Cohen had some amount of time to react and take evasive action.

¶ 26 We find that there are factual issues remaining concerning how Cohen approached the intersection and whether his speed was excessive in light of the combined weight of the vehicle and trailer he drove. The evidence established that Cohen saw the decedent's truck before he reached the stop sign. Cohen was traveling down a very steep incline. He claims that his speed was 50 miles per hour as he headed down the hill, but his own traffic expert determined that his speed was higher than that. Cohen's estimate of the combined weight of his truck and trailer and the Bobcat was 14,000 pounds. The evidence clearly shows that Cohen applied his brakes in an effort to avoid the collision because there were skid marks. However, the evidence was less clear as to whether he stopped early enough to avoid the collision. Approaching an intersection with due care requires the driver to be conscious of the distance required to stop his vehicle. Here, any attempt to bring a 14,000-pound vehicle to a full and complete stop down a steep incline impacts the issues of control and stopping distance.

¶ 27 We also find that there is a factual issue about whether Cohen's attention was compromised by the fact that he was talking on a cell phone as he approached the intersection. Cohen testified that he was holding the cell phone between his shoulder and

ear at the same time that he was shifting his vehicle while traveling down the steep incline.

¶ 28    Additionally, we find that there is a factual issue about Cohen's evasive maneuver. He made a conscious choice to steer his vehicle to the left, towards the decedent's truck, rather than away from the decedent's truck.  Cohen's own expert provided an opinion that if he stayed within his lane while applying his brakes, the collision would not have occurred.

¶ 29    We find that at this stage of the case, there are factual issues about whether Cohen approached the intersection with due care.  The trier of fact should have the opportunity to consider these factual issues.

¶ 30    In general, more than one negligent act can create a proximate cause of an injury. *Long v. Friesland*, 178 Ill. App. 3d 42, 55, 532 N.E.2d 914, 922 (1988).  Although there are factual similarities between this case and *Salo v. Singhurse*, *Salo* does not hold that a driver on the preferential road is always faultless.  Furthermore, in *Conner v. McGrew*, 32 Ill. App. 2d 214, 217-18, 177 N.E.2d 417, 418-19 (1961), the appellate court explained how the preferential highway rule is applied in Illinois:

> "The authorities agree that a driver on a preferential highway does not have an absolute or unqualified right of way that can be asserted regardless of circumstances, distances or speed.  Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right of way, nor may he heedlessly proceed into obvious danger.  \*\*\*

The Illinois decisions, in applying this rule, have consistently held that it is the function of the jury to determine whether the judgment of the driver on the preferential highway conformed to the standards of the reasonable and prudent man."

¶ 31   At this stage of the case, we disagree with the trial court's conclusion that the decedent's failure to stop at the Water Street stop sign is the sole proximate cause of the collision.  Although Cohen had the right to expect that the decedent would obey the stop sign, he had his own duty "to keep a proper lookout, observe due care in approaching and crossing intersections, and drive as a prudent person would to avoid a collision when danger is discovered or, by the exercise of reasonable care, should have been discovered."  *Johnson*, 223 Ill. App. 3d at 484, 585 N.E.2d at 229 (citing *Salo*, 181 Ill. App. 3d at 643, 537 N.E.2d at 341); *Conner*, 32 Ill. App. 2d at 217-18, 177 N.E.2d at 418-19.  Considering all aspects of Cohen's approach to the intersection, a factual issue exists whether Cohen's actions and inactions contributed causally to this collision.

¶ 32                              CONCLUSION

¶ 33   We find that Cohen and Jo-Co Pools failed to establish that there are no genuine issues of fact remaining.  Therefore, we reverse the judgment of the circuit court of Randolph County.

¶ 34   Reversed.

13

2015 IL App (5th) 140408

NO. 5-14-0408

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

JUDY MULHOLLAND GRIFFIN,               )     Appeal from the
as Special Administrator of the Estate of   )     Circuit Court of
John E. Mulholland, Jr., Deceased,          )     Randolph County.
                                            )
        Plaintiff-Appellant,                )
                                            )
v.                                          )     No. 12-L-41
                                            )
JOSEPH A. COHEN and                         )
JO-CO POOLS, INC.,                          )     Honorable
                                            )     Richard A. Brown,
        Defendants-Appellees.               )     Judge, presiding.
_____

**Opinion Filed:**          October 1, 2015
_____

**Justices:**          Honorable Melissa A. Chapman, J.

                       Honorable Judy L. Cates, P.J., and
                       Honorable Richard P. Goldenhersh, J.,
                       Concur
_____

**Attorney**          Brian K. Zirkelbach, Law Office of Brian K. Zirkelbach, 1100
**for**               Walnut Street, P.O. Box 687, Murphysboro, IL 62966
**Appellant**
_____

**Attorneys**         John P. Cunningham, Denise Baker-Seal, Daniel G. Hasenstab,
**for**               Brown & James, P.C., Richland Plaza I, 525 West Main, Suite 200,
**Appellees**         Belleville, IL 62220-1547
_____