NOTICE
Decision filed 11/09/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190207-U

NO. 5-19-0207

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JOHN DAVID SHEPPARD JR. and LINDA L. SHEPPARD, | ) ) ) | Appeal from the Circuit Court of Jasper County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 17-MR-5 |
| JAMES ROBARDS and JACQUELINE ROBARDS, | ) ) | Honorable Kimberly G. Koester, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Welch and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the Sheppards established the existence of a continuing trespass or nuisance, there is a genuine issue of material fact about whether the doctrine of *laches* could be applied to bar their suit. We reverse the trial court's order of summary judgment in favor of the Robards and remand for further proceedings.

¶ 2    The plaintiffs, John and Linda Sheppard, appeal from the trial court's entry of summary judgment in favor of the defendants, James and Jacqueline Robards. Since 1987, the Robards's septic tank system discharged its effluent materials from their home. The effluent materials flowed into a ditch at the front of the Robards's home and then downhill onto property owned by the Sheppards. Eventually, the land owned by the

1

Sheppards began to erode because of the continuous flow of effluent water. The Sheppards filed a lawsuit against the Robards alleging wrongful trespass. The Robards filed a motion for summary judgment alleging that the Sheppards' suit was barred by the doctrine of *laches* because they had been aware of the effluent discharge for 30 years and failed to file suit at an earlier time. The trial court entered summary judgment in favor of the Robards on December 20, 2018. For the reasons stated in this order, we reverse and remand.

¶ 3                                                 BACKGROUND

¶ 4     The Sheppards and the Robards live in a residential subdivision of Newton. The Sheppards purchased lot 13 in 1985 or 1986 and built a home on the lot in 1987. The Robards purchased lot 12 in 1987 and built a home on the lot in 1988. In 1989, the Sheppards purchased lot 14,[1] which to date remains unimproved. The lot owned by the Robards is slightly higher in elevation than the lots owned by the Sheppards because water flows from the ditch in the front of the Robards's lot down to the Sheppards' lots.

¶ 5     In approximately December 1987, the Jasper County Health Department allegedly approved a septic tank system for installation for the residence that the Robards were building on lot 12. After the proposed location for the septic tank system was marked on the Robards's property, Linda Sheppard asked James Robard to move its location. When the septic tank system was installed and became operational, the effluent discharge began

---

[1]In 1989, the Sheppards jointly purchased lot 14 with neighbors, Mr. and Mrs. Allen Herdeen. At an unspecified time between 1989 and 2015, the Sheppards bought out the Herdeens's ownership interests in lot 14. Thereafter, in 2015, the Sheppards conveyed ownership interest to lot 14 to their two daughters and retained their own life estate in lot 14.

draining into a ditch by the public township road in front of the Robards's property. The effluent discharge flowed from the ditch into a culvert that runs underneath the Sheppards' driveway on lot 13 and flows onto lot 14.

¶ 6    Initially, the primary problem the Sheppards noticed with the Robards's septic tank system was the sewage odor. Over the years, the Sheppards repeatedly complained about the odor. In the late 1980s, the effluent water started to collect on the opposite end of the culvert on or near lot 13, resulting in some damage to that corner of lot 13. Later in 2005 or 2006, the erosion became more serious when the Sheppards noticed further erosion on the corner of lot 13 and onto lot 14. In his deposition testimony, John David Sheppard Jr. testified about the erosion damage as follows: "There was enough dirt washed away from my transformer pole that my underground secondary became visible and that is when I started collecting rocks and anything I could to start throwing in that thing to try to slow down the flow of the water."

¶ 7    On February 21, 2017, the Sheppards filed their lawsuit seeking injunctive relief against the Robards. The Sheppards based their request for injunctive relief on the theory of continuing trespass. The Sheppards alleged that the Robards discharged and/or emptied effluent water from their septic tank system into the open ditch in front of the Robards's home. The ditch was part of the public township waterway. By directing the effluent water into the ditch, the Robards allegedly altered the natural water flow. The Sheppards alleged that the increase in and alteration of the natural flow of water resulted in the erosion of the Sheppards' land.

3

¶ 8    In response to the Sheppards' complaint, the Robards argued that the doctrine of *laches* barred the wrongful trespass claim because the Sheppards had been aware of the effluent discharge for approximately 30 years and had not taken any action. Further, the Robards claimed that they had reasonably relied upon the Sheppards' inaction. The trial court denied the Robards's motion to dismiss based on *laches*, and the Robards filed an answer raising *laches* as an affirmative defense.

¶ 9    The Robards filed their motion for summary judgment relying upon the *laches* doctrine in late August 2018, arguing that the Sheppards admitted knowledge of the effluent water drainage since 1987 or 1988. The Sheppards filed a cross-motion for summary judgment based upon the same set of facts arguing that they did not lack diligence in bringing their claim, and that the Robards were not prejudiced by any resulting delay. They argued that while they knew that the effluent water was being discharged into the ditch and through their culvert, they did not become aware of the trespass from the increased natural water flow until the erosion began to occur approximately 11 to 12 years earlier. The Sheppards alternatively argued that even if the court found that they failed to exercise due diligence in bringing the claim, the Robards wholly failed to demonstrate that the delay caused any prejudice or hardship, or that the Robards were misled or took a course of action different from what they would have otherwise taken.

¶ 10   In the trial court's December 20, 2018, written order granting the Robards's motion and denying the Sheppards' motion, the court noted that the Sheppards' complaint sought equitable relief, and thus traditional limitations periods would not

4

apply. However, the court concluded that the Robards were not required to show that they were prejudiced by the 30-year delay in the initiation of the suit because any potential limitations period would have expired. Without further explanation, the court rejected the Sheppards' claim that the consistent discharge of effluent water from the Robards's septic tank system constituted a continuing trespass.

¶ 11    The Sheppards filed a motion asking the trial court to reconsider the judgment order arguing that although they had been aware of the effluent drainage of the Robards's septic tank system onto their property for approximately 30 years, the erosion damage did not occur to their property until 2007 or 2008. On April 25, 2019, the trial court entered a docket entry in which it denied the Sheppards' motion to reconsider. The Sheppards timely appeal from the trial court's orders of summary judgment and denial of their motion to reconsider.

¶ 12                                    ANALYSIS

¶ 13    Under section 2-1005(c) of the Code of Civil Procedure, a party is entitled to summary judgment as a matter of law when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." 735 ILCS 5/2-1005(c) (West 2016). In considering a summary judgment motion, the court, need only decide if a question of fact exists. *Koziol v. Hayden*, 309 Ill. App. 3d 472, 476 (1999). "Summary judgment is a drastic remedy that should be granted only where the movant's right to it is clear and free of doubt." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 357 (2000). In determining whether to grant or deny a request for summary judgment, the trial court strictly construes all

5

evidence in the record against the moving party and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986); *Koziol*, 309 Ill. App. 3d at 476. The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72 (1992). If reasonable people could draw divergent inferences from the undisputed material facts or if a material fact remains in dispute, then the trial court should deny the motion. *Koziol*, 309 Ill. App. 3d at 476. On appeal, courts review summary judgment orders *de novo*. *Myers*, 225 Ill. App. 3d at 72.

¶ 14 We start our analysis by defining the term "continuing trespass."[2] The Restatement of Torts provides: "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." Restatement (Second) of Torts § 161(1) (1965). Illinois courts have further defined the term. A continuing nuisance occurs " 'where one creates a nuisance, and permits it to remain, [and] so long as it remains[,] it is treated as a continuing wrong, and giving rise, over and over again, to causes of action.' " *Meyers v. Kissner*, 149 Ill. 2d 1, 10 (1992) (quoting *Simon v. Neises*, 395 P.2d 308, 312 (Kan. 1964)); see also *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 541-42 (1998) (holding that the Toll Highway Authority was responsible for a continuing nuisance caused by a wrongful diversion of water onto the church's property in a case filed by the church eight years after the

_____

[2]We use the term "continuing trespass" interchangeably with "continuing nuisance" in this order.

highway construction was concluded). Therefore, the importance of the continuing trespass doctrine lies in its application to cases that would otherwise have been barred by the expiration of the applicable statute of limitations had expired.

¶ 15    For a defendant to successfully claim *laches*, the following is required:

> " '(1) [c]onduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit[;] and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.' " *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 838 (1996) (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 553 (1958)).

The defendant has the burden to prove *laches* by a preponderance of the evidence. *Id.* at 834. It is not enough for the defendant to assert *laches* merely based on a delay. *Osler Institute, Inc. v. Miller*, 2015 IL App (1st) 133899, ¶ 23. "In order to present a successful defense of *laches*, a defendant must show both that the plaintiff lacked diligence in presenting its claim and the defendant was prejudiced as a result of the delay." *Id.* (citing *Mo v. Hergan*, 2012 IL App (1st) 113179, ¶ 36).

¶ 16    We find that the supreme court case of *Meyers v. Kissner* is instructive on the issues of continuing trespass or nuisance and *laches*. In *Meyers v. Kissner*, the plaintiff, a downstream landowner, sued the defendant, an upstream landowner, for erosion damage to his farmland caused by earthen levees. *Meyers*, 149 Ill. 2d at 3. The downstream landowner also sought injunctive relief. *Id.* In response, the upstream landowner argued that the statute of limitations precluded the damages suit, while the doctrine of *laches* precluded injunctive relief. *Id.* at 6-7. Noting that the limitations period for damage to

7

property was five years, the supreme court acknowledged that the difficulty in water overflow damages was determining the date when a cause of action accrues. *Id.* at 8-9. If a permanent structure is the cause of the increased flow of water, the cause of actions accrues upon completion of the structure. *Id.* at 9. However, if the structure itself is not apparently injurious to the subservient land, then the cause of action accrues after an actual injury occurs. *Id.* In cases where flooding may be uncertain in time, duration, and extent, any structure that displays an obvious potential for unnatural overflow constitutes an immediate permanent injury. *Id.*

¶ 17   The supreme court found that the defendant's levees constituted a nuisance to the plaintiff and noted that the passage of the five-year limitations period for damages did not change the character of the levees. *Id.* at 10. The court stated that:

> " 'the maintenance of a structure which will continue to cause a wrongful diversion of water upon the plaintiff's land, in quantities varying with the seasons, is a continuing nuisance, and an invasion of the plaintiff's right from day to day, and he may select his own time for bringing an action therefor,' and he is not barred by the lapse of five years from the erection of the structure." *Id.* at 10-11 (quoting *Wells v. New Haven & Northampton Co.*, 23 N.E. 724, 725 (Mass. 1890)).

In concluding that the plaintiff was not barred from seeking monetary damages from the defendant, the court explained that for continuing nuisances and trespasses, "the five-year statute of limitations merely specifies the window in time for which monetary damages may be recovered prior to the filing of the complaint." *Id.* at 11.

¶ 18   Turning to *laches*, the supreme court defined the term as "such a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to

8

bar relief in equity." *Id.* at 12. The court acknowledged that a statute of limitations applicable to an action at law is often used by courts as a benchmark for determining the appropriate length of time that should serve to operate as a bar to an equitable suit. *Id.* However, depending upon the facts and circumstances of an individual case, a court could conclude that *laches* bars an equitable suit even if the applicable legal statute of limitations would not have expired. *Id.* Conversely, a suit may be allowed to proceed even though the legal statute of limitations elapsed long ago. *Id.* Finally, the court held that in keeping with the 20-year time frame for adverse possession and prescriptive easements, "in actions seeking equitable relief from the flooding of one's property, absent extraordinary situations, *laches* will not act as a bar prior to the running of the 20-year time period." *Id.*

¶ 19    In this case, the Sheppards are not seeking legal damages; instead, they are seeking equitable relief in the form of an injunction. Thus, traditional statutes of limitation are not necessarily applicable. The Sheppards have long been concerned about the location of the Robards's septic tank system and its effluent discharge draining down the path from the Robards's home to the Sheppards' home and ending on lot 14. Early on, the major issue the Sheppards had with the septic tank system involved the noxious odors resulting from the effluent discharge. From the testimony provided in the depositions of the Sheppards, there has been no love lost between the neighbors. The effluent discharge and its odors have been the source of numerous complaints over the years. In 2005 or 2006, the Sheppards noticed the water erosion and began to take remedial steps to halt the

progress. Ultimately, on February 21, 2017, the Sheppards filed suit against the Robards —approximately 11 to 12 years after discovering the erosion damage.

¶ 20    Based upon the facts and evidence presented from the record on appeal, we find that there is no question that the ongoing effluent discharge from the Robards's septic tank system constitutes a continuing trespass. This continuing trespass has occurred since 1988. The trial court concluded that the Sheppards were barred by *laches*. The trial court's *laches* decision was based upon the entirety of the time that the trespass has endured—30 years. The trial court did not analyze the issue from the perspective of the Sheppards' discovery of the erosion damage 11 to 12 years before they filed suit. As noted in *Meyers v. Kissner*, the legal statutes of limitation are not controlling in a continuing trespass case because so long as the trespass continues, it gives rise " 'over and over again' " to causes of action. *Meyers*, 149 Ill. 2d at 10 (quoting *Simon*, 395 P.2d at 312). Further, *Meyers* held that when a plaintiff seeks equitable relief from flooding, such as in this case, *laches* will not bar suit if filed within 20 years, unless there are extraordinary reasons to apply the doctrine. *Id.* at 12.

¶ 21    In this case, the Robards provided no documentation or statements detailing the alleged prejudice or hardship. See *Osler Institute*, *Inc.*, 2015 IL App (1st) 133899, ¶ 23. The trial court cannot assume prejudice because of the delay; the Robards must show that the Sheppards both lacked diligence in presenting their claim and that the Robards were prejudiced because of the delay. *Mo*, 2012 IL App (1st) 113179, ¶ 36.

¶ 22    Overall, we find that there are genuine unresolved issues of material fact regarding the trial court's application of the *laches* doctrine. Initially, as stated earlier in this order,

10

we find that the nature of the constant effluent discharge from the Robards's septic tank system onto the Sheppards' property constitutes a continuing trespass. We also find that there is a factual question about the timing of the erosion damage. Although the Sheppards have had notice of the effluent discharge for 30 years, the water flow changed and began causing erosion damage to the Sheppards' property 11-12 years before suit was filed. We find that this raises a question about whether *laches* would be appropriate because the timeline was within the limitations period established by the supreme court in *Meyers v. Kissner*: "[W]e hold that in actions seeking equitable relief from the flooding of one's property, absent extraordinary situation, *laches* will not act as a bar prior to the running of the 20-year time period." *Meyers*, 149 Ill. 2d at 12. Further, we find that there is a factual question about whether the Robards met the standard of proof for application of *laches*. The Robards must show both that the Sheppards have not diligently pursued equitable relief and that the Robards have been prejudiced by the delay. Further, proof of both elements is required by a preponderance of the evidence. *O'Brien*, 281 Ill. App. 3d at 834. As the Robards provided no evidence that they have been prejudiced by the delay, a factual question remains unanswered. *Mo*, 2012 IL App (1st) 113179, ¶ 36. Therefore, we find that the trial court's order granting summary judgment to the Robards was erroneous.

¶ 23                              CONCLUSION

¶ 24    For the foregoing reasons, we reverse the trial court's December 20, 2018, summary judgment order and remand this case to the Jasper County circuit court for further proceedings.

11

¶ 25    Reversed and remanded.